UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

CHARLESTOWN CAPITAL ADVISORS, :
LLC,                          :
                              :        No. 1:18-CV-04437-JGK
              Plaintiff,      :
                              :
        - against -           :
                              :
ACERO JUNCTION, INC., ACERO   :
JUNCTION HOLDINGS, INC., and JSM :
INTERNATIONAL LIMITED,        :
                              :
              Defendants.     :

----------------------------------------------------x

**PLAINTIFF CHARLESTOWN CAPITAL ADVISORS, LLC'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER FEDERAL RULE OF
CIVIL PROCEDURE 37(e)**

Samuel N. Lonergan
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel:  (212) 836-8000
Fax:  (212) 836-8689
samuel.lonergan@arnoldporter.com
robert.grass@arnoldporter.com

*Attorneys for Plaintiff Charlestown Capital
Advisors, LLC*

US 167245945

## TABLE OF CONTENTS

**Page**

BACKGROUND ....................................................................................................... 4

    A.    The Acero Defendants Have Known Since the Beginning of this Case that Mr. Kapoor is Central to the Allegations and Defenses in this Action............. 4

    B.    The Acero Defendants Thwarted Charlestown's Efforts to Obtain Mr. Kapoor's Emails...................................................................................... 6

    C.    The Destruction of Mr. Kapoor's Email Account .......................................... 10

ARGUMENT ........................................................................................................... 13

  I.    ACERO FAILED TO TAKE REASONABLE STEPS TO PRESERVE MR. KAPOOR'S ESI .............................................................................. 13

  II.    THE COURT SHOULD IMPOSE SANCTIONS TO CURE THE PREJUDICE TO CHARLESTOWN FROM ACERO'S DESTRUCTION OF MR. KAPOOR'S ESI ............................................................................. 15

    A.    Charlestown is Prejudiced by Acero's Destruction of Mr. Kapoor's ESI ...... 15

  III.    ACERO ACTED WITH THE INTENT TO DEPRIVE CHARLESTOWN OF INFORMATION ............................................................................. 18

  IV.    THE COURT SHOULD IMPOSE SEVERE MEASURES TO REMEDY ACERO'S SPOLIATION ........................................................................ 20

    A.    The Court Should Enter Judgment for Charlestown ...................................... 21

    B.    To Cure the Prejudice to Charlestown, the Court Should Preclude the Acero Defendants from Offering Evidence in Support of Their Affirmative Defenses Three Through Seven .................................................. 21

CONCLUSION ........................................................................................................ 23

i

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

*CAT3 LLC v. Black Lineage, Inc.*,
  164 F. Supp. 3d 488 (S.D.N.Y. 2016)..................................................................22

*Coan v. Dunne*,
  602 B.R. 429 (D. Conn. 2019) ..............................................................13, 18, 22

*In re Reifler*,
  No. 18-CV-4711 (KMK), 2019 WL 396525 (S.D.N.Y. Jan. 31, 2019) ................................21

*Karsch v. Blink Health Ltd*,
  17-CV-3880 (VM) (BCM), 2019 WL 2708125 (S.D.N.Y. June 20, 2019).................... *passim*

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
  15cv9363 (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018).................................14, 16, 22

*Moody v. CSX Transp., Inc.*,
  271 F. Supp. 3d 410 (W.D.N.Y. 2017) .............................................................3, 19

*Ottoson v. SMBC Leasing & Fin., Inc.*,
  268 F. Supp. 3d 570 (S.D.N.Y. 2017)...................................................................15

<u>**Other Authorities**</u>

Federal Rule of Civil Procedure 37(e) ............................................................... *passim*

Rule 26 ..............................................................................................5

Rule 26(f) ............................................................................................5

Rule 30(b)(6) .........................................................................................8

Rule 37(e)(1) ..........................................................................4, 13, 21, 22

Rule 37(e)(2) ........................................................................................4, 18

Rule 37(e)(2)(C) ......................................................................................21

Plaintiff Charlestown Capital Advisors, LLC ("Charlestown") submits this memorandum of law in support of its motion for sanctions under Federal Rule of Civil Procedure 37(e). Specifically, Charlestown seeks relief because Defendants Acero Junction, Inc. ("Junction") and Acero Junctions Holdings, Inc. ("Holdings," together with Junction "Acero Defendants") failed to preserve electronically stored information ("ESI"), including the email account of Jateen S. Kapoor. Additionally, the Acero Defendants actively prevented Charlestown from learning of the deletion of Mr. Kapoor's email account up until they were ordered to describe their document collection and production. Mr. Kapoor served as the co-President and Director of the Acero Defendants and signed the contract at issue in this action.

This breach of contract action arises from the Acero Defendants' failure to honor the terms of an Engagement Agreement with Charlestown, dated January 11, 2018 ("Engagement Agreement"). Under the Engagement Agreement, the Acero Defendants retained Charlestown as their financial advisor in connection with the possible sale, merger or other combination of the Acero Defendants or their assets or other financial transactions. Upon consummation of a transaction whereby JSW Steel Limited ("JSW Steel") agreed to purchase all of Holdings' shares, the Acero Defendants refused to pay the agreed-upon fee to Charlestown. The Acero Defendants now contend that Mr. Kapoor, then Director and co-President of both Holdings and Junction, who signed the Engagement Agreement for the Acero Defendants, lacked the authority to bind them. Further, Mr. Kapoor testified at his deposition that he did not learn of the existence of the Engagement Agreement, dated January 11, 2019, until April 2019. Kapoor Dep. at 99.2-100:4. (excerpt attached to the Declaration of Samuel N. Lonergan, dated January 13, 2020 ("Lonergan Dec.") as exhibit A). Mr. Kapoor plainly is a critical witness to the facts at issue.

1

On November 25, 2019—one month before the close of discovery—Charlestown first
learned that Mr. Kapoor's email account had been deleted sometime between May and August
2019 and that the Acero Defendants could not recover Mr. Kapoor's deleted emails.[1]  In
addition, the Acero Defendants represented that some of Mr. Kapoor's emails had been extracted
prior to the destruction of Mr. Kapoor's account, but had not yet been produced, and were also
deleted (through a second allegedly inadvertent deletion).  The destruction of Mr. Kapoor's
email account occurred at least one year *after* Charlestown filed its complaint and at least 10
months *after* the Acero Defendants' counsel represented that counsel had complied with its
obligation to communicate to the Acero Defendants that they were required to preserve relevant
documents.  Yet Abhishek Aggarwal, a former co-President of Junction and Holdings and
current employee of Junction, testified that he was not informed of any such obligation until

---

[1] During his December 12, 2019 deposition, Mr. Kapoor testified that he is in possession of his emails from his time
at Acero and purports to have them on a laptop located in India. Kapoor Dep. at 32.20 - 37.7; (Exhibit A).  On
December 23, 2019, Counsel for Acero informed Charlestown that Acero will be producing Mr. Kapoor's
"discoverable and non-privileged e-mails that we all learned were still available when Jateen was deposed [on
December 12.]" 12/23/19 email sent by M. Roberts. (*See* Lonergan Dec. Ex. C.).  To date, no such emails have been
produced, and any production of such emails now -- more than 1.5 years after this lawsuit was initiated and after
discovery has closed -- by no means addresses the prejudice that Charlestown has experienced as a result of Acero's
spoliation.  The extent to which the emails in Mr. Kapoor's possession, if any, actually duplicate the emails
previously maintained on the Acero Defendants' system is unknowable and therefore, no production orchestrated by
Mr. Kapoor can answer the questions raised by the Acero Defendants' deletion or resolve the prejudice to
Charlestown.  Additionally, Acero's purported December 2019 discovery of Mr. Kapoor's emails further reflects
Acero's historic and ongoing lack of interest in complying with its discovery obligations in this matter or potentially
a more sinister motive to delay this case and conceal Mr. Kapoor's emails, which have taken on unusual importance
in a straightforward breach of contract action in light of Mr. Kapoor's testimony.

US 167245945

October or November 2019. A. Aggarwal Dep. at 30.21- 31.6, 117-118;(*See* Lonergan Dec. as Ex. B).

Aside from failing to institute a litigation hold, the Acero Defendants did not even seek to retrieve ESI from Mr. Kapoor's email account until May 2019—one year *after* Charlestown filed its complaint, eight months *after* the Acero Defendants represented that they would produce information responsive to Charlestown's document requests, and four months *after* the Acero Defendants represented to the Court that they were in the process of completing their document productions. Having determined in August 2019 that Mr. Kapoor's email account had been irretrievably deleted, the Acero Defendants failed to disclose that information and opposed providing Charlestown with information concerning their document collection—despite repeated requests from Charlestown regarding its ESI collection process—until November 2019 when this Court ordered them to disclose information concerning their ESI collection and production.

The Acero Defendants' deletion of Mr. Kapoor's emails due to its failure to take reasonable steps to preserve ESI merits sanctions under Rule 37(e). Charlestown has been prejudiced by the Acero Defendants' destruction of Mr. Kapoor's email account because Charlestown is missing contemporaneous accounts of Mr. Kapoor's statements and conduct that will be necessary to challenge some of his assertions on cross-examination. And, the Acero Defendants' behavior, including the unaccounted for delay in collecting Mr. Kapoor's emails, the apparent inability to prevent the destruction of Mr. Kapoor's emails, the Acero Defendants' failure to  disclose the destruction of Mr. Kapoor's emails to Charlestown, and the Acero Defendants' misleading statements to Charlestown and this Court regarding the collection and production of Mr. Kapoor's emails was "so stunningly derelict as to evince intentionality." *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017).

3

Under Rule 37(e)(2), this Court should enter judgment for Charlestown and against the Acero Defendants. The questions concerning the authenticity of Mr. Kapoor's signature and his authority to bind the Acero Defendants are critical issues in this case. The loss of Mr. Kapoor's email account renders the risk of an incorrect judgment palpable. The Acero Defendants—not Charleston—must bear that risk. Even if the Court determines that the Acero Defendants did not act with the intent to deprive Charleston of evidence, under Rule 37(e)(1), it should preclude the Acero Defendants from offering evidence in support of their affirmative defenses that are specific to Mr. Kapoor.

## BACKGROUND

### A.    The Acero Defendants Have Known Since the Beginning of this Case that Mr. Kapoor is Central to the Allegations and Defenses in this Action

Charlestown filed its Complaint on May 18, 2018. *See* Doc. 1. Charlestown alleges that it entered into the Engagement Agreement with Junction, which is wholly owned by Holdings. Under the Engagement Agreement, Charlestown agreed to act as a financial advisor to the Acero Defendants in exchange for a fee upon consummation of certain transactions. Junction breached the Engagement Agreement when JSW Steel acquired Holdings and the Acero Defendants failed to pay Charlestown its agreed-upon fee. Charlestown further alleges that JSM International Limited ("JSM") tortiously interfered with the Engagement Agreement by causing the Acero Defendants to breach it. Mr. Kapoor signed the Engagement Agreement for the Acero Defendants. *See* Doc. 1-1.

The Acero Defendants filed their Answer on June 19, 2018. *See* Doc. 18. In their Answer, the Acero Defendants asserted the following affirmative defenses relating to the authenticity of Mr. Kapoor's signature on the Engagement Agreement and his authority to bind the Acero Defendants and JSM:

4

3.      The alleged "Engagement Agreement attached to the Complaint at Exhibit A is void because, upon information and belief, Plaintiff intentionally caused a copy of the signature of Mr. Jateen Kapoor to be placed upon the final page of the alleged agreement, constituting a forgery by Plaintiff. Such forgery renders the alleged "Engagement Agreement" void and unenforceable.

4.      Plaintiff's claims fail because, upon information and belief, Plaintiff misrepresented to Mr. Jateen Kapoor the document he was signing, and intentionally induced Mr. Jateen Kapoor to sign a page which was later appended to the alleged "Engagement Agreement". Such fraud renders the alleged "Engagement Agreement" void and unenforceable.

5.      In the alternative, Plaintiff's claims fail because, upon information and belief, Plaintiff intentionally caused or attempted to cause Mr. Jateen Kapoor to sign an agreement through mistake of material fact.

6.      Plaintiff knew or should have known due to his business relationship with Acero that Mr. Jateen Kapoor could not enter into a binding agreement on behalf of Acero Junction with only his own signature, rendering the contract invalid and void.

7.      Plaintiff's claims fail because Plaintiff knew or should have known that Mr. Jateen Kapoor was not an agent of JSM capable of binding JSM with regard to the alleged "Engagement Agreement," and as such, no valid contract exists.

Consistent with the centrality of Mr. Kapoor to their affirmative defenses, in their Rule 26 initial disclosures, the Acero Defendants identified Mr. Kapoor as a witness "who will testify as to the alleged Engagement Agreement." Doc. 32. At the same time, the Acero Defendants also represented that they maintained "Email communications between Raj Maheshwari and Dinesh Aggarwal and Jateen Kapoor . . . in the corporate records and electronically stored information of the defendants." *Id.*

On July 30, 2018, the parties filed a Rule 26(f) Conference Report and Joint Proposed Discovery Plan ("Joint Discovery Plan"). Doc. 31. Among other things, the parties represented to the Court that "Counsel for the parties have communicated to their respective clients their obligations to preserve and not destroy or delete any potentially relevant documents or other

5

evidence." *Id.* at II.C.  However, it does not appear that any litigation hold was communicated to the Acero Defendants' witnesses.  Abhishek Aggarwal, an employee of Junction in 2018 and 2019, testified that he never received a litigation hold and that he was  told to preserve documents until October or November 2019. A. Aggarwal Dep. at 30.21- 31.6,117-118; ( Lonergan Dec. as Ex. B).   And none of the declarations submitted by counsel in response to the Court's order requiring Acero to describe its document collection efforts recount that a litigation hold was put in place.

B.     **The Acero Defendants Thwarted Charlestown's Efforts to Obtain Mr. Kapoor's Emails**

The Joint Discovery Plan contemplated the close of fact discovery on February 15, 2019. Due to defendants' tardy and inadequate discovery responses, that deadline has been extended many times.  Under the operative scheduling order, discovery closed on December 24, 2019. Doc. 111.

On August 16, 2018, Charlestown served document requests on the Acero Defendants. (*See* Lonergan Dec. Ex. D).  Among other things, Charlestown requested information regarding the negotiation and execution of the Engagement Agreement and the Acero Defendants' transaction with JSW Steel.  Charlestown also sought information relating to the Acero Defendants' affirmative defenses specific to Mr. Kapoor:

> 12.     All documents and communications concerning Mr. Jateen Kapoor's role and responsibility at Acero or JSM, including but not limited to, any documents where Mr. Jateen Kapoor executed documents on behalf of these entities.

> 14.     All documents and communications concerning the purported forgery of Mr. Kapoor's signature on the Engagement Agreement, as alleged in defendants' third affirmative defense.

> 15.     All documents and communications concerning Charlestown's alleged misrepresentation of the document signed by Mr. Kapoor or its purported

6

fraudulent attachment of Mr. Kapoor's signature to the Engagement Agreement, as alleged in defendants' fourth affirmative defense.

        16.    All documents and communications concerning the purported mistake of material fact alleged in defendants' fifth affirmative defense.

The Acero Defendants provided their written response on October 1, 2018. (*See* Lonergan Dec. Ex. E.) In their response, the Acero Defendants represented that they would "produce relevant documentation responsive" to Requests 14 through 16 and would "produce relevant documentation regarding Mr. Kapoor's role and responsibility at Acero or JSM" subject to certain objections to Request 12. The Acero Defendants' commitment to produce responsive information necessarily required them to search Mr. Kapoor's custodial file for responsive ESI.

But information responsive to Charlestown's Requests was not forthcoming in a timely manner. On November 5, after the protective order was entered in this action, Charlestown inquired about the status of defendants' document productions. 11/5/18 email sent by M. Bullerman. (*See* Lonergan Dec. Ex. F). In the meantime, unable to obtain dates from the Acero Defendants for depositions of their witnesses despite repeated requests, Charlestown noticed Mr. Kapoor's deposition for October 25, 2019. (Lonergan Dec. Ex. G.)

On November 7, 2018, the Acero Defendants produced two files in PDF format consisting of about 1,400 documents. The Acero Defendants' production was both substantively and technically deficient. Substantively, the production consisted only of drafts of the JSW contract to purchase Holdings, which were responsive to only one of Charlestown's documents requests. The Acero Defendants did not produce documents responsive to any of Charlestown's other thirty (30) requests, including those relating most directly to Mr. Kapoor. Technically, the documents did not contain metadata and did not identify the custodial files from which they were

produced as required by the parties' Stipulated ESI Protocol. 12/21/18 email sent by M. Bullerman. (Lonergan Dec. Ex. H).

On January 4, 2019, in light of the approaching fact discovery deadline and the need to obtain documents to facilitate meaningful deposition discovery, Charlestown sought Court intervention to compel document production. *See* Doc. 39 (Jan. 4, 2019 letter). At a hearing on January 16, 2019, the Acero Defendants represented that they were in the process of completing document production and would complete the production within two weeks. The Acero Defendants also committed to providing descriptions of their document collection processes to Charlestown. The Court ordered defendants to complete their productions by the end of January and extended the fact discovery deadline until March 15. *See* Doc. 43 (Mar. 4, 2019 letter).

The Acero Defendants neither completed their production by the end of January nor provided information to Charlestown regarding the Acero Defendants' document collection processes. Doc. 43 (3/4/19 Letter). Instead, production continued to be sporadic and incomplete, extending well past that January deadline. And the Acero Defendants continued to stall providing deposition dates for their witnesses. Defendants' stalling tactics led Charlestown to make a second request for Court intervention. *See* Doc. 43 (3/4/19 letter).

At a hearing on March 22 to address, among other things, the Acero Defendants' failure to produce a Rule 30(b)(6) deposition witness, counsel for Charlestown stated that Charlestown had "not received any responses [from the Acero Defendants] to" its questions "about how documents were collected, what methodology was used, what was the scope, who were the custodians." Tr. (Mar. 22, 2019) at 21 Doc. 66; *see also id.* at 22–23. Counsel for the Acero Defendants represented that he would answer those questions "before this week is out." *Id.* at 23. But when the week was out, the Acero Defendants informed Charlestown that "we haven't

completed the assignment [to respond to questions about the Acero Defendants' document collection and production processes] despite my prognostication." 3/29/29 email sent by M. Roberts. (Lonergan Dec. Ex. I).

On the same day of the hearing, this action was stayed pending consideration of the motion of Eckert Seamans Cherin & Mellott LLC ("Eckert") to withdraw as counsel for defendants. *See* Doc. 52, 53. Eckert's withdrawal did not require the Acero Defendants to retain new counsel because Graydon Head & Ritchey, LLP ("Graydon") has represented the Acero Defendants continuously since July 30, 2018. *See* Doc. 30. However, Eckert's withdrawal required JSM to obtain substitute counsel. After JSM retained substitute counsel (*See* Doc. 79), the parties jointly proposed a schedule that contemplated a deadline for completion of document discovery on September 4, 2019. Doc. 80 (July 31, 2019 letter). That deadline subsequently was extended until October 4, 2019 and, ultimately to December 24, 2019. Doc. 92; Doc. 111.

On August 12, 2019, after the stay was lifted, Charlestown again asked the Acero Defendants for information concerning their ESI collection and production, the scope of their document productions and apparent deficiencies in their productions. Doc 102-2. Among other things, Charlestown stated that the Acero Defendants' "productions do not reflect a proper search and production of documents from Acero's email servers." *Id.* at 3.

On October 14, 2019, having failed to receive a satisfactory response, Charlestown sought Court intervention, among other things, to compel the Acero Defendants to provide information regarding their document collection efforts. Doc. 102. Charlestown noted that "[a] review of Defendants' documents indicated that hundreds, if not thousands, of emails produced by Charlestown were missing from Defendants' production." *Id.* at 3. The Acero Defendants responded to Charlestown's request in an October 21, 2019 letter to the Court, in which counsel

9

for the Acero Defendants resisted providing information regarding the Acero Defendants'

production and inexplicably and misleadingly indicated that Jateen Kapoor's emails had been

searched and produced:

> Putting that aside, Junction and Holdings have explained their document
> production/collection process. On October 11, 2019, the following message
> was shared with Charlestown's counsel by email: *"Sam, In addition to the
> documents you received from prior Acero counsel, the documents you received
> from our firm were derived from the following sources/searches: . . . and (iii)
> Produced after review: were: Strategy-Arrow-JK Archived; Strategy-Arrow-JK*
> Sent; ***Jateen's*** [sic]***Kapoor Inbox; Jateen's Kapoor Archived; and Jateen***
> ***Kapoor's Sent"***

Doc. 109 (emphasis added).[2]  By order dated October 24, 2019, the Court directed the Acero

Defendants to provide information concerning their collection and production of ESI:

> On or before **November 25, 2019**, the Acero Defendants shall serve one or more
> declarations or affidavits documenting the scope and depth of its search for and
> production of relevant ESI, including, without limitation, the identity of all ESI
> custodians whose files were searched, a description of the files so searched (*e.g.*,
> email accounts, desktop or laptop computers, shared drives or files, text messages,
> WhatApp communications), and lists of search terms employed.

Doc. 111 at ¶ 2.d (emphasis in original).

C.    **The Destruction of Mr. Kapoor's Email Account**

On November 25, 2019, the Acero Defendants submitted three declarations in response to

the Court's order.  Those declarations demonstrate that the Acero Defendants did nothing to

collect ESI from Mr. Kapoor (or anyone else) until May 2019—one year *after* Charlestown filed

its complaint, ten months *after* counsel represented that it had complied with its obligation to

inform the Acero Defendants about their obligation to preserve documents, and eight months

*after* the Acero Defendants represented that they would produce information responsive to

---

[2] Counsel for the Acero Defendants was aware of the deletion of Jateen Kapoor's emails by August 2019. *See*

Declaration of Michael A. Roberts Declaration at ¶¶ 11-12. (Lonergan Dec. Ex. J).

Charlestown's document requests. And, after the Acero Defendants learned in August 2019 that Mr. Kapoor's email account had been deleted, they did not inform Charlestown of the deletion, inexplicably represented to Charlestown and the Court that Mr. Kapoor's emails had been searched, and did nothing to attempt to remedy the situation until Charlestown sought Court intervention, leading this Court to order the Acero Defendants to describe their document collection and production processes.

Prior to May 2019, the Acero Defendants made incomplete document productions in November 2018 and January and March 2019, including documents provided to Eckert by Mr. Kapoor, documents that Eckert possessed pre-litigation and documents provided to Eckert by Dinesh Agarwal and Ashok Agarwal—representatives of JSM. *See* Declaration of Katherine L. Pomerleau, Esq. ("Pomerleau Dec.")(Lonergan Dec. Ex. K)¶ 11. Counsel apparently left in Mr. Kapoor's discretion the determination regarding responsiveness of documents based on "his review of Plaintiff's discovery requests and discussions with counsel." Pomerleau Dec. ¶ 10. (Lonergan Dec. Ex. K). There is no evidence that counsel directed, or the Acero Defendants undertook any search of ESI for information responsive to Charlestown's document requests or that a litigation hold informing employees of their obligation to preserve documents, including ESI was put in place.

It was not until May 20, 2019, after an unsuccessful mediation session, that counsel directed Junction to search Mr. Kapoor's email account for responsive information—one year after Charlestown filed its complaint, ten months after Charlestown served its document requests and four months after the time that the Acero Defendants represented their document production would be complete. *See* Declaration of Acero Junction, Inc. Counsel, Michael A. Roberts ("Roberts Dec") ¶ 9 (Lonergan Dec. Ex. J); Declaration of Thomas Trevino ("Trevino Dec.") ¶ 2

(Lonergan Dec. Ex. L). At that time, Mr. Trevino extracted Mr. Kapoor's emails that contained certain search terms and exported them to a PST file. *See id.* Counsel did not ask for and Mr. Trevino did not convey the extracted emails to counsel until August 2019. Roberts Dec. ¶ 11; (Lonergan Dec. Ex. J) Trevino Dec. ¶ 3. (Lonergan Dec. Ex. L).

By the time counsel contacted Mr. Trevino to retrieve Mr. Kapoor's emails in August, an unidentified "human resources individual at the Junction plant" had deleted Mr. Kapoor's email account as part of a wholesale deletion of accounts of former employees and the emails that previously had been extracted were no longer available and could not be restored (due to a second, purportedly "unwitting" deletion of Mr. Kapoor's emails unrelated to the wholesale deletion of former employee accounts). *See* Roberts Dec. ¶ 12; (Lonergan Dec. Ex. J). Trevino Dec. ¶¶ 4–5.(Lonergan Dec. Ex. L). After the Acero Defendants learned that Mr. Kapoor's email account was irretrievably lost, they did not inform Charlestown despite its repeated inquiries about the Acero Defendants' collection and production of ESI and instead misleadingly represented that Mr. Kapoor's emails had been collected.

Sometime after August—"in recent weeks" according to Mr. Trevino's November 25 declaration—Junction searched the email accounts of other employees for emails they received from or sent to Mr. Kapoor using the same search terms it had used to search Mr. Kapoor's then deleted email account. *See* Roberts Dec. ¶ 13;(Lonergan Dec. Ex. J). Trevino Dec. ¶ 6. (Lonergan Dec. Ex. L). Finally, in November -- only after this Court issued its October 24 Order directing the Acero Defendants to describe their document collection -- Junction searched across its network for certain terms. *See* Roberts Dec. ¶ 17; (Lonergan Dec. Ex. J). Trevino Dec. ¶ 8. (Lonergan Dec. Ex. L).

12

## ARGUMENT

Federal Rule of Civil Procedure 37(e) permits the Court to impose sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." As this Court has held, consideration of a motion for sanctions under Rule 37(e) involves a three-part test:

> The first is to decide if the rule applies at all — that is, if a party failed to take "reasonable steps" to preserve electronically stored information "that should have been preserved in anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been "prejudice to another party from loss of this information," in which case the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider — regardless of prejudice to any other party — is whether the destroying party "acted with the intent to deprive another party of the information's use in the litigation," in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*Karsch v. Blink Health Ltd*, 17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *13 (S.D.N.Y. June 20, 2019) (quoting *Coan v. Dunne*, 602 B.R. 429, 438 (D. Conn. 2019)). As demonstrated below, Rule 37(e) applies, Charlestown been prejudiced by the destruction of Mr. Kapoor's email account and Acero acted intentionally, warranting severe sanctions.

## I.   ACERO FAILED TO TAKE REASONABLE STEPS TO PRESERVE MR. KAPOOR'S ESI

"'The first element of the traditional spoliation test,' which is also applicable to ESI under Rule 37(e), 'requires the moving party to demonstrate that the spoliating party had an obligation to preserve the evidence at the time it was destroyed.'" *Karsch*, 2708125, at *18 (citation omitted). "'The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" *Id.* (citations omitted). And "[o]nce the obligation to preserve

13

relevant ESI attaches, the party in possession of the ESI must take reasonable steps' to preserve it." *Id.* at *19.

The Acero Defendants' obligation to preserve evidence arose no later than May 18, 2018 when Charlestown filed its complaint. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, 15cv9363 (ALC) (DF), 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018) ("In a typical case, a party's duty to preserve relevant evidence is triggered not later than the date the action is commenced."). At that time, if not sooner, the Acero Defendants were "'under a duty to preserve what [they knew, or reasonably should have known,] is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.'" *Id.* (citation omitted). It cannot be disputed that the Acero Defendants had a duty to preserve Mr. Kapoor's ESI, which plainly would have contained information relevant to the claims and defenses in this action, and not only would have been, but had been requested in discovery at least 10 months *before* the Acero Defendants irretrievably destroyed Mr. Kapoor's email account.

The Acero Defendants plainly did not take reasonable steps to preserve ESI. They did not even take the threshold step required to preserve ESI. Despite counsel's representation that it had informed the Acero Defendants of its obligation to preserve documents, the Acero Defendants did not implement a litigation hold. Counsel did not satisfy its "obligat[ion] to 'oversee compliance with [a] litigation hold, monitoring the party's efforts to retain and produce the relevant documents,' and to 'become fully familiar with [their] client's document retention policies, as well as the client's data retention architecture.'" *Lokai Holdings LLC v. Twin Tiger USA LLC*, 15cv9363 (ALC) (DF), 2018 WL 1512055, at *11 (S.D.N.Y. Mar. 12, 2018). Instead, the Acero Defendants deleted Mr. Kapoor's ESI "as part of a wholesale deletion of accounts of

14

former employees." (Roberts Dec. ¶ 12)(Ex. J). even though the litigation had been pending for one year and Charlestown's discovery requests had been pending for at least ten months. It is precisely to avoid that sort of routine destruction of evidence that parties implement litigation holds and other procedures to preserve documents. The Acero Defendants failed to take those reasonable steps.

## II.    THE COURT SHOULD IMPOSE SANCTIONS TO CURE THE PREJUDICE TO CHARLESTOWN FROM ACERO'S DESTRUCTION OF MR. KAPOOR'S ESI

### A.    Charlestown is Prejudiced by Acero's Destruction of Mr. Kapoor's ESI

To establish prejudice warranting curative sanctions, "[i]t is sufficient if the existing evidence plausibly 'suggests' that the spoliated ESI could support the moving party's case." *Karsch*, 2019 WL 2708125, at *21 (citations omitted). It is not necessary to "establish that 'a smoking gun email' . . . was irretrievably lost." *Karsch*, 20129 WL 2708125, at *21. That follows because "determining the content of lost emails is a 'difficult task,' and the difficulty is caused entirely by" the Acero Defendants, making it "unfair to require 'affirmative proof as to whether the evidence would have been advantageous to the movant' as a predicate to subsection (e)(1) sanctions." *Id.* at *20 (citation omitted); *accord Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) ("The prejudiced party must not be held 'to too high a strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence,' because doing so 'would allow parties who have destroyed evidence to profit from that destruction.'" (citation omitted)).

In *Karsch*, this Court found prejudice where the moving parties "have come forward with 'plausible, concrete suggestions as to what [the destroyed] evidence might have been,' while plaintiff — the only party with actual *knowledge* as to what was in those emails — has come forward with nothing but legal argument, premised almost entirely on defendants' inability to

prove that which plaintiff's misconduct has prevented the Court from determining with any certainty." *Id.* at *21 (emphasis in original). And in *Lokai*, the Court found prejudice even where information in destroyed evidence could be submitted through witness testimony because "[i]t is the documentary evidence that would presumably demonstrate the accuracy (or inaccuracy) of any witness testimony, and that would afford Lokai with the means to challenge the witness' credibility." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 15cv9363 (ALC) (DF), 2018 WL 1512055, at *12 (S.D.N.Y. Mar. 12, 2018).

The Acero Defendants' destruction of Mr. Kapoor's email account deprives Charlestown of contemporaneous accounts of his activities that would demonstrate that accuracy or inaccuracy of his testimony and afford Charlestown the means to challenge his credibility. That is particularly prejudicial given Mr. Kapoor's critical role as signatory to the Engagement Agreement and the Acero Defendants' affirmative defenses challenging the authenticity of his signature and his authority to bind the defendants.

Indeed, during Mr. Kapoor's deposition, Charlestown confronted him with emails he had sent or received that Charlestown—but not the Acero Defendants—produced. For example, Mr. Kapoor testified that the parties did not engage in negotiations before they executed the Engagement Agreement. Kapoor Dep. at 18:11–19:23,115. (*See* Lonergan Dec. Ex. A. But that is belied by emails produced by Charlestown—but not the Acero Defendants—that show representatives of Charlestown doing just that with Mr. Kapoor in March and September 2017. 3/17/2017 email sent by J. Weber, 9/15/2017 email sent by J. Weber. (Lonergan Dec. Exs. M, N)(CTOWN00022225, CTOWN00018677).

Similarly, Mr. Kapoor's testimony that he did not sign the Engagement Agreement is contradicted by emails produced by Charlestown—but not the Acero Defendants—that establish

16

that Mr. Kapoor was at Charlestown's office on January 11, 2018 when the Engagement

Agreement was signed.  1/10/2018 email sent by R. Maheswari.(Lonergan Dec. Ex. O)(

CTOWN00028803).  In addition, an email produced by Charlestown—but not the Acero

Defendants—shows that Charlestown sent Mr. Kapoor a copy of the signed Engagement

Agreement on January 12, 2018[3] and sent a copy to the Acero Defendants' counsel on February

8, 2018. 1/12/2018 email sent by J Weber, 2/8/2018 email sent by J. Weber. Lonergan Dec. Exs.

P, Q. (CTOWN00017831–41, CTOWN00025971–81).  At that time, Mr. Kapoor did not protest

that his signature had been forged or that he lacked authority to bind the Acero Defendants.  Nor

did Mr. Kapoor protest when he requested financial services under the Engagement Agreement

as emails produced by Charleston—but not the Acero Defendants—show. 1/20/2018 email sent

by J. Kapoor, 2/26/2018 email sent by J. Kapoor.  )*See* Lonergan Dec. Exs. R, S.)

(CTOWN00017761–62, CTOWN00017917–18).  Indeed, neither Mr. Kapoor nor anyone else at

the Acero Defendants protested until Charlestown presented them with an invoice in April 2018.

The foregoing are merely examples of the many emails sent to or from Mr. Kapoor that

Charlestown produced and that the Acero Defendants did not produce, and which support

Charlestown's allegations.  There are bound to be other such relevant emails between

Mr. Kapoor and Acero Defendant colleagues or third parties regarding the Engagement

Agreement or its binding effect on the Acero Defendants to which Charlestown was not privy.

---

[3] Notwithstanding that Mr. Kapoor admitted that the January 12 email bore his correct email address, Mr. Kapoor

testified that he did not receive the January 12 email and only learned of the January 11 Engagement Agreement in

April 2018.  This is the precisely the type of factual question that could have been easily resolved by reference to

Mr. Kapoor's deleted emails. Dep. of J. Kapoor at 99.2-100.4, 35-36, 131. (Lonergan Dec. Ex. A).

US 167245945

Charlestown is faced with the prospect of proving its claims and rebutting the Acero Defendants' defenses without access to critical information about a critical witness.

That the Acero Defendants have managed to produce some emails sent by or received from Mr. Kapoor from other email accounts does not cure the prejudice to Charlestown. "There can be no assurance that [Charlestown] has received from third-party sources all of the meaningful emails that could and should have been obtained in the first instance from" Mr. Kapoor's email account. *Coan v. Dunne*, 602 B.R. 429, 440 (D. Conn. 2019). "It is equally plausible to conclude" that the emails that Charlestown has received "are but the tip of a proverbial iceberg of other powerfully probative email communications by [Mr. Kapoor] during time periods that are critical in this litigation and that have not emerged from other parties in discovery." *Id.*

In particular, the Acero Defendants' production of some emails from Abhishek Aggarwal's email account does not cure the prejudice to Charlestown. *See* Roberts Dec. ¶¶15–16; Trevino Dec. ¶ 7. Mr. Aggarwal testified that he used three email accounts during the relevant period, only one of which was accessible when the Acero Defendants collected his ESI. He no longer has access to the other two email addresses and the Acero Defendants never collected ESI from them before he lost access. *See* Aggarwal Dep. at 123:15–126:2. (Lonergan Dec. Ex. B). As a result, the Acero Defendants' collection of ESI from Mr. Aggarwal also is incomplete and some of his emails also have been irretrievably lost due to the Acero Defendants' failure to take reasonable steps to preserve ESI.

## III. ACERO ACTED WITH THE INTENT TO DEPRIVE CHARLESTOWN OF INFORMATION

"[A] party may be found to have acted with an intent to deprive within the meaning of Rule 37(e)(2) where '(1) evidence once existed that could fairly be supposed to have been

18

material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proferred by the spoliator.'" *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017).

Applying this standard in *Moody*, the court held that a spoliating party's intent to deprive its opposing party of evidence was proved by circumstantial evidence that it had destroyed information allegedly believing that "the material was still accessible," but did not "confirm[] that the data had been preserved in another repository." *Id.* at 431. As the court explained, the spoliating party's conduct was "so stunningly derelict as to evince intentionality." *Id.* at 432.

Here too, the Acero Defendants' proffered explanation that Junction deleted Mr. Kapoor's email account "as part of a wholesale deletion of accounts of former employees" (Roberts Dec. ¶ 12), is belied by circumstantial evidence that its conduct was "so stunningly derelict as to evince intentionality." *Id.* As shown above, there can be no dispute that the Acero Defendants knew or should have known that they had a duty to preserve Mr. Kapoor's email account and that they should have collected and produced Mr. Kapoor's emails long before May 2019. Ultimately, however, the Acero Defendants' behavior caused Mr. Kapoor's emails to be deleted twice and prejudiced Charlestown.

Mr. Kapoor is critical to the Acero Defendants' affirmative defenses and already had been a subject of Charlestown's discovery requests for at least ten months *before* the Acero Defendants irretrievably destroyed his email account. Despite that fact, the Acero Defendants never issued a litigation hold or otherwise informed employees of their duty to preserve information, including ESI. Nor did they make any effort to search Mr. Kapoor's email account

19

until one year after the complaint was filed and at least eight months *after* they represented that they would produce information that necessarily would have required them to do so. In addition, for at least three months after Mr. Kapoor's email account supposedly had been searched and potentially responsive emails collected, Junction did not convey them to the Acero Defendnats' counsel and counsel did not ask them to do so. During that time, the Acero Defendants did nothing to determine whether the emails had been properly preserved. And the Acero Defendants did nothing to voluntarily inform Charlestown that Mr. Kapoor's email account had been destroyed despite Charlestown's repeated requests for information about their document collection and production processes: that information was not disclosed by the Acero Defendants until this Court ordered them to do so. Instead, the Acero Defendants chose not to inform Charlestown of their deletion of Mr. Kapoor's emails and attempted to avoid disclosing that fact by misleadingly advising Charlestown and this Court that Mr. Kapoor's emails had been searched and produced long after their deletion of his emails was known.[4] There is no plausible explanation for the Acero Defendants' conduct other than their intent to deprive Charlestown of information contained in Mr. Kapoor's email account.

## IV. THE COURT SHOULD IMPOSE SEVERE MEASURES TO REMEDY ACERO'S SPOLIATION

As a remedy for the Acero Defendants' intentional spoliation, the Court should enter a judgment in favor of Charlestown and against the Acero Defendants. But even if the Court determines that the Acero Defendants did not act intentionally, the Court should preclude the

---

[4] The Acero Defendants disclosed their deletion of Mr. Kapoor's emails only in response to this Court's Order requiring them to provide affidavits describing their production.

US 167245945

Acero Defendants from submitting evidence on their affirmative defenses three through seven to cure the prejudice to Charlestown.

> A.    **The Court Should Enter Judgment for Charlestown**

Rule 37(e)(2)(C) expressly authorizes the Court to "dismiss the action or enter a default judgment" as a remedy for intentional spoliation.  That remedy is warranted here.  Mr. Kapoor's evidence is essential to any fair trial in this case.  Through their affirmative defenses, the Acero Defendants have made the authenticity of Mr. Kapoor's signature and the extent of his authority critical issues in this case.  Without access to all of his responsive emails, there is a severe risk that Charlestown will be unable to adequately cross-examine Mr. Kapoor to rebut the spurious allegations of the Acero Defendants' affirmative defenses.

> B.    **To Cure the Prejudice to Charlestown, the Court Should Preclude the Acero Defendants from Offering Evidence in Support of Their Affirmative Defenses Three Through Seven**

Under Rule 37(e)(1), the Court should "order measures no greater than necessary to cure the prejudice."  [A] sanction should '(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party.'"  *In re Reifler*, No. 18-CV-4711 (KMK), 2019 WL 396525, at *6 (S.D.N.Y. Jan. 31, 2019) (citation omitted).  In addition to monetary sanctions, "[o]ther sanctions permissible under subsection (e)(1) include more 'serious measures,' such as 'forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument.'"  *Karsch*, 2019 WL 2708125, at *13  *Id.* (quoting Rule 37(e)(1) advisory committee's notes to 2015 amendment).

21

To cure the prejudice to Charlestown, the Court should preclude the Acero Defendants from submitting evidence on their affirmative defense three through seven. Each of those affirmative defenses depends on evidence specific to Mr. Kapoor. Charlestown's ability to cross-examine Mr. Kapoor on critical issues relevant to those defenses is impaired because the limited emails it has from other sources "may be the tip of a proverbial iceberg" and the missing emails may be necessary to adequately challenge Mr. Kapoor's credibility. *Coan*, 602 B.R. at 440. Absent Mr. Kapoor's emails containing evidence of Mr. Kapoor's conduct and statements contemporaneous with and subsequent to the signing of the Engagement Agreement, Charlestown bears the risk that it will be unable to rebut those affirmative defenses. The Acero Defendants—not Charlestown—should bear the risk caused by their destruction of Mr. Kapoor's email account.

Finally, "Rule 37(e)(1) authorizes an award of attorneys' fees and costs to the moving party, to the extent reasonably necessary to address any prejudice caused by the spoliation." *Karsch*, 2019 WL 2708125, at *26. In addition to any other measures, the Court orders, it should require the Acero Defendants to bear Charlestown's costs, including reasonable attorneys' fees, for its expenses incurred pursuing the lost evidence, preparing for and deposing defendants' witnesses without a complete document production from the Acero Defendants, and in making this motion and securing relief. *See id.* (requiring spoliating party to reimburse prejudiced party for its attorneys' fees and costs); *Coan v. Dunne*, 602 B.R. 429, 444 (D. Conn. 2019) (same); *Lokai*, 2018 WL 1512055, at *17 (same); *CAT3 LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016) (same).

US 167245945

## CONCLUSION

For the foregoing reasons, the Court should grant Charlestown's motion under Rule 37(e) and enter judgment for Charlestown.

Dated: January 13, 2020

Respectfully submitted

Samuel N. Lonergan
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel:  (212) 836-8000
Fax:  (212) 836-8689
samuel.lonergan@arnoldporter.com

*Attorneys for Plaintiff Charlestown Capital
Advisors, LLC*

23