UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __09/30/2020__

CHARLESTOWN CAPITAL ADVISORS,
LLC,

                Plaintiff,

     -against-

ACERO JUNCTION, INC., et al.,

              Defendants.

18-CV-4437 (JGK) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

By motion dated January 13, 2020 (Dkt. No. 124), plaintiff Charlestown Capital Advisors, LLC (Charlestown) seeks spoliation sanctions pursuant to Fed. R. Civ. P. 37(e) against defendants Acero Junction, Inc. (Junction) and Acero Junction Holdings, Inc. (Holdings) (collectively the Acero Defendants), up to and including the entry of a default judgment against them, as a penalty for their failure to preserve the business email account of Jateen S. Kapoor, their co-President and Director, whose signature appears on the January 11, 2018 engagement agreement (Agreement) at the center of this action but who has since testified that he did not negotiate or sign the Agreement, that he did not learn of its existence until April 2018 – notwithstanding that a fully-executed copy was emailed to him by Charlestown on January 12, 2018 – and that he lacked authority to bind the Acero Defendants to its terms.

The evidence submitted in support of and in opposition to the sanctions motion shows that the Acero Defendants and their litigation counsel made significant missteps. At the outset of this action, in May 2018, they failed to institute an effective litigation hold or otherwise take adequate steps to preserve – or to search – electronically stored information (ESI) relevant to this action, including Kapoor's business email account, jateen.kapoor@acerojunction.com (the Kapoor Account). A year later, a "mid-level human resources person" deleted the entire Kapoor Account as part of a "wholesale" deletion of former employee emails. To make matters worse, the most

relevant Kapoor emails, which had been identified through the use of basic search terms and segregated for counsel's future review (the Segregated Emails) also disappeared, having been "unwittingly" stored for only 15 days on "Google servers." Although counsel knew about the destruction of both data sets in August 2019, he failed to tell Charlestown – or the Court – until November 2019, one month before the close of discovery.

Thereafter, in December 2019, Jateen Kapoor – who by then was working overseas for an affiliate of defendant JSM International Limited (JSM) – testified at deposition that he still had copies of his Acero emails on a laptop. Using an e-discovery vendor, the Acero Defendants reviewed approximately 50,000 emails recovered from Kapoor's laptop but, after a "de-duplication procedure," produced only 412 emails sent to or from the Kapoor Account, only 24 of which were exchanged with Charlestown. This is a small fraction of the 1,650 emails exchanged between the Kapoor Account and Charlestown that are relevant to this action and were produced in discovery by Charlestown itself. One of the missing items is the January 12, 2018 email from Charlestown to Kapoor, attaching a fully-executed copy of the Agreement, the receipt and handling of which, by Kapoor, has independent – and obvious – evidentiary significance.

It is unclear, on the record now before the Court, whether the missing Kapoor-Charlestown emails were never recovered from the Kapoor laptop or, alternatively, whether they were intentionally withheld from production as a result of the Acero Defendants' deduplication procedure. Their counsel, who was responsible that procedure, was unable to answer the question definitively at oral argument. It is clear, however, that after deleting the original Kapoor Account and losing the Segregated Emails – and after finding, searching, and producing emails from whatever email data remained on Kapoor's laptop two years after the crucial communications took

place – the Acero Defendants failed to produce all of Jateen Kapoor's discoverable ESI, thereby prejudicing plaintiff's ability to present its case at trial.

For the reasons that follow, plaintiff's sanctions motion will be granted in part. Sanctions pursuant to subsection (e)(1) are well warranted and will be assessed as "necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). However, the record does not contain clear and convincing evidence that the Acero Defendants acted "with the intent to deprive [plaintiff] of the information's use" in this action, Fed. R. Civ. P. 37(e)(2), as required before the Court may impose terminating sanctions pursuant to subsection (e)(2). *See Lokai Holdings v. Twin Tiger USA LLC*, 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018) (citing *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 499 (S.D.N.Y. 2016)) ("it is appropriate, given the severity of the sanctions permitted under [subsection (e)(2)], for the intent finding to be based on clear and convincing evidence").

Consequently, the Court will impose monetary sanctions on the Acero Defendants sufficient to deter them from further misconduct and compensate Charlestown for its attorneys' fees and other expenses incurred in obtaining documents and information that should have been provided many months earlier and in litigating the instant sanctions motion. In addition, defendants will be precluded from arguing or offering testimony or other evidence designed to show that Kapoor did not send or receive emails that have been produced by other parties and that show any of Kapoor's known email addresses as the sender or a recipient. Thus, for example, Kapoor may not deny that the January 12, 2018 email from Charlestown, together with its attachment, appeared in his inbox, in the ordinary course, at or shortly after the time it was sent by Charlestown. Finally, Charlestown will be permitted to present evidence to the finder of fact at trial regarding the loss of the Kapoor ESI and – in the event the case is tried to a jury – may seek an appropriate jury instruction, the wording of which will be at the discretion of the trial judge, allowing the jury to

consider that loss of that evidence, and the circumstances of its loss, in evaluating witness credibility and otherwise making its determinations. The Court will not, however, impose (or recommend the imposition of) subsection (e)(2) sanctions such as the entry of a default judgment against the Acero Defendants.

## I.    BACKGROUND

Defendant Junction, which is wholly owned by defendant Holdings, operates a steel mill in Ohio, where both Acero Defendants are headquartered. Compl. (Dkt. No. 1) ¶¶ 28-29, 44. Holdings was owned by defendant JSM, incorporated in the United Arab Emirates and headquartered in Dubai. *Id.* ¶¶ 11, 36. Kapoor was the co-President and a Director of both Acero Defendants. *Id.* ¶¶ 32-33. Abhishek Aggarwal (Abhishek[1]) was the other co-President, and also a Director, of the Acero Defendants. *Id.* Plaintiff Charlestown is a private equity firm headquartered in New York. *Id.* ¶¶ 27, 43.

### A.    Plaintiff's Claims

In this action, filed on May 18, 2018, Charlestown seeks damages for breach of the Agreement, which Kapoor allegedly signed on January 11, 2018, while at Charlestown's offices, on behalf of Junction and its "affiliates" (collectively referred to in the Agreement as the "Company"). Compl. ¶¶ 1, 7, 49, 93-104, & Ex. A. The Agreement entitled Charlestown to a fee upon the consummation of an "M&A Transaction," defined as a "sale, merger, or other combination of the Company or its assets," but did not "obligate Charlestown to introduce the counterparty to any potential . . . M&A Transaction in order to be entitled to its fee." Compl. ¶¶ 7, 10; Ag. ¶¶ 1.1, 3.1. Charlestown also seeks damages from JSM for tortious interference with the Agreement. Compl. ¶¶ 85-92, 117-128.

---

[1] So denominated to distinguish Abhishek Aggarwal from other witnesses with similar last names.

### B.      Pre-Litigation Events

On January 12, 2018 – the day after the Agreement was allegedly signed by Kapoor – Charlestown principal John Weber transmitted a fully-executed copy, countersigned by Charlestown Managing Director Raj Maheshwari, to Kapoor at his business email address, under cover of an email beginning, "Great to see you yesterday. Attached is a scanned copy of the agreement signed by you and Raj." Declaration of Samuel N. Lonergan dated January 13, 2020 (Lonergan Decl.), Ex. P (January 12 Email). The January 12 Email went on to discuss "steps forward." *Id.* Over the following weeks, Kapoor continued to communicate with Charlestown about a potential merger transaction proposed by Charlestown. *See*, *e.g*., Lonergan Decl. Ex. R (emails between Kapoor and Weber dated January 19 and 20, 2020). On February 8, 2018, Weber sent another copy of the fully-executed Agreement to John J. McCague of the law firm Eckert Seamans Cherin & Mellott, LLC (Eckert), outside counsel to the Acero Defendants, "[f]or your files." Lonergan Decl. Ex. Q. There is no evidence in the record of any direct response to either the January 12 Email, sent to Kapoor, or the February 8 email, sent to defendants' counsel.

The merger proposal made by Charlestown did not come to fruition. Instead, on March 28, 2018, Junction, Holdings, and JSM entered into a stock purchase agreement with non-party JSW Steel Limited (JSW Steel) under which JSW Steel purchased 100% of the shares of Holdings from JSM. Compl. ¶ 11 & Ex. B. Charlestown did not introduce the Company to JSW Steel or work on the JSW Steel transaction, but asserts that the sale of Holdings' stock was an M&A Transaction, as that term is used in the Agreement, for which it is owed a fee of approximately $2.6 million. Compl. ¶¶ 13-15.

On April 11, 2018, Charlestown sent an invoice for that fee to Kapoor. Compl. ¶¶ 15, 75 & Ex. C. On April 13, 2018, Weber emailed another copy of the invoice to McCague. *Id.* ¶ 78 & Ex. D. On April 24, 2018, after meeting with Charlestown in New York, Dinesh Agarwal

(Dinesh) of JSM sent an email asking Charlestown to withdraw the invoice. *Id*. ¶¶ 20, 82 & Ex. E. Dinesh wrote that "[w]e have never engaged you and agreed for any such fee"; that,"[a]s Acero management, we have never approved such engagement"; and that "as per. Mr. Jateen, he never agreed and discussed with you such engagement." *Id*. (punctuation as in the original). Dinesh added that Charlestown "had no role or clue about the JSW [Steel] deal so we do not find you for any eligibility for fee." *Id*. Eckert followed up on April 26, 2018 with a letter, on behalf of the Acero Defendants, questioning the authenticity of the Agreement and denying any obligation to pay Charlestown a fee because "Acero's engagement with Charlestown has always been limited to a financing transaction where Charlestown had introduced the potential lenders." *Id*. ¶ 83 & Ex. F. Eckert's letter was copied to Kapoor and to Akash Agarwal (Akash) of JSM. *Id*.

This action followed.

### C.    Defendants' Affirmative Defenses

In their answers, all three defendants assert that the Agreement is void because "plaintiff intentionally caused a copy of the signature of Mr. Jateen Kapoor to be placed upon the final page of the alleged agreement, constituting a forgery," "misrepresented to Mr. Jateen Kapoor the document he was signing, and intentionally induced Mr. Jateen Kapoor to sign a page which was later appended to the alleged 'Engagement Agreement,'" and "intentionally caused or attempted to cause Mr. Jateen Kapoor to sign an agreement through mistake of material fact." Acero Def. Ans. (Dkt. No. 18) at 19 (¶¶ 3-5); JSM Ans. (Dkt. No. 24) at 19 (¶¶ 3-5). Additionally, defendants assert that Charlestown "knew or should have known" that Kapoor was not authorized to enter into a binding agreement on behalf of Junction "with only his own signature," and that he "was not an agent of JSM capable of binding JSM." Acero Def. Ans at 19 (¶¶ 6-7); JSM Ans. at 19 (¶¶ 6-7).

6

### D.      The Litigation Hold Memos

On July 30, 2018, the parties filed their Rule 26(f) Conference Report and Joint Proposed Discovery Plan (Dkt. No. 31), affirming that "[c]ounsel for the parties have communicated to their respective clients their obligations to preserve and not destroy or delete any potentially relevant documents or other evidence." *Id*. ¶ II.C. The Eckert firm, which was counsel of record for all three defendants, did in fact prepare a written litigation hold memo, dated June 13, 2018, which directed Kapoor "and all employees under [his] supervision" to "immediately suspend all activities that might result in the deletion, alteration, or loss of any documents or data that exist in electronic form, relating in any way to the subject of this action." Declaration of Michael A. Roberts filed Jan. 27, 2020 (2020 Roberts Decl.) (Dkt. No. 131-2) ¶ 7 & Ex. A, at 1. The memo directed the client to "refrain from manual deletion or destruction" of potentially relevant ESI; to "disable" any automatic document retention programs which might destroy or delete relevant emails; and to "put in place a prohibition against the deletion of any documents." *Id*.

There is no evidence in the record, however, suggesting that Kapoor ever forwarded the litigation hold memo, or conveyed its contents, to anyone else at the Acero Defendants. Kapoor's co-President and co-Director, Abhishek, testified at deposition that "[n]obody instructed me anything like that." Lonergan Decl. Ex. P (Abhishek Tr.) at 30:21-31:6.

On August 16, 2018, Charlestown served written discovery requests on defendants, Lonergan Decl. Ex. D, and on September 4, 2018, Eckert sent draft discovery responses by email to Kapoor, Dinesh, and "Ashok Agarwal of JSM International, Inc." (Ashok), asking them to locate responsive documents, together with an updated litigation hold memo, dated September 3, 2018, which was substantially similar in content to the June 13 memo. Although the updated memo was addressed to four individuals – Kapoor, Dinesh, Ashok, and Abhishek, 2020 Roberts Decl. Ex. B, at ECF pages 6-8 – Eckert's transmittal email went only to Kapoor, Dinesh, and Ashok (all at what

appear to be personal email addresses ending in "gmail.com" or "yahoo.com"). There is no evidence in the record that the updated litigation hold memo ever went to Abhishek.[2]

E.       **Charlestown's Discovery Requests and Defendants' Responses**

Charlestown's discovery requests required the production of all documents, including Kapoor's emails, concerning the Agreement, the alleged M&A Transaction, the parties' payment dispute, and defendants' affirmative defenses, including their allegations of forgery, "misrepresentation of the document signed by Mr. Kapoor," mistake of fact, and lack of authority. Lonergan Decl. Ex. D. On October 1, 2018, the Acero Defendants agreed, for the most part, to produce responsive documents. *Id*. Ex. E. In November 2018 (following the Court's entry of a protective order on October 31, 2018 (Dkt. No. 37), and an email from Charlestown inquiring about the status of the document production on November 5, 2018, Lonergan Dec. Ex. F), the Acero Defendants produced approximately 1,400 pages of documents, all of which "were provided to Eckert by Jateen Kapoor in response to his review of Plaintiff's discovery requests and discussion with counsel." Declaration of Katherine L. Pomerleau (Pomerleau Decl.) (Dkt. No. 126-11) ¶ 10. The November production contained only "six emails to, from, or copying Jateen Kapoor." Lonergan Reply Decl. ¶ 4.

In a December 21, 2018 email to Eckert, Charlestown's counsel complained about various deficiencies in the November production. Lonergan Decl. Ex. H. Counsel also complained about

---

[2] Although the transmittal email was addressed to Dinesh, it appears that he either did not read the updated litigation hold memo or did not understand it. At deposition, Dinesh explained that defendant JSM "doesn't need to keep any documents related to Charlestown. It is Junction who has to keep the document in relation to Charlestown." Declaration of Samuel A. Lonergan dated Feb. 3, 2020 (Lonergan Reply Decl.) Ex. U (Dinesh Tr.) at 375:21-24.  Dinesh explained that this was because "JSM was never a party with Charlestown on the matter." *Id*. at 275:6-7.

defendants' tardiness in scheduling depositions, including the deposition of Kapoor, which plaintiff had previously noticed, *see id*. Ex. G, and was attempting to schedule for January 2019. *Id*. Ex. H.

On January 4, 2019, Charlestown filed a letter-application seeking to compel additional discovery from defendants. (Dkt. No. 39.) After a hearing on January 16, 2019, the Hon. John G. Koeltl, United States District Judge, ordered defendants to complete their document production by the end of January 2019, and extended the fact discovery deadline (originally February 15, 2019) to March 15, 2019. (Dkt. Nos. 42, 43.)

### F.    Eckert Withdraws

On March 4, 2019, Charlestown filed another letter-application, complaining that defendants had failed to complete document production by the end of January, failed to describe their document collection processes (as they had promised to do during the January 16 hearing), and failed to make witnesses available for deposition. Pl. Ltr. dated March 4, 2019 (Dkt. No. 43), at 1.[3] The next day, Eckert moved to be relieved as counsel for all three defendants, citing a breakdown in communications with JSM and an unwaivable conflict of interest. (Dkt. No. 44.)

At a hearing on March 22, 2019, Charlestown's lead counsel, attorney Lonergan, stated again that plaintiff had "not received any responses" from the Acero Defendants to its questions "about how documents were collected, what methodology was used, what was the scope, who were the custodians." Transcript of March 22, 2019 Conf. (Dkt. No. 66) at 21:11-18. Attorney Roberts stated that he would answer those questions "before [the] week is out." *Id*. at 23:2-3. However, at

---

[3] According to plaintiffs, the Acero Defendants did produce certain additional documents on January 15 and February 27, 2019, respectively, through attorney Roberts of Graydon Head & Ritchey, LLP (Graydon). Roberts was was co-counsel of record for the Acero Defendants, but not for defendant JSM. Pl. Ltr. dated March 4, 2019, at 1. According to Roberts, the documents produced in January and February were "secured from JSW Steel," the Acero Defendants' new owner, which is not a party to this action. Declaration of Michael A. Roberts dated Nov. 25, 2019 (2019 Roberts Decl.) (Dkt. No. 126-10) ¶ 6.

the conclusion of the March 22 hearing, Judge Koeltl stayed the case pending the outcome of the withdrawal motion, *see id*. at 19:10-13, which he referred to me. (Dkt. Nos. 52, 53.)[4] On March 29, 2019, Roberts informed Lonergan that the Acero Defendants had not "completed the assignment." Lonergan Decl. Ex. I.

I granted the withdrawal motion on May 23, 2019. (Dkt. No. 70.) The Acero Defendants did not require new lawyers because attorney Roberts of Graydon remained their counsel of record, but JSM did, as a result of which the stay was not lifted until August 7, 2018. At that point the parties requested, and Judge Koeltl ordered, a new document production completion date of September 4, 2019, with all fact discovery to be completed by September 25, 2019. (Dkt. No. 81.)

### G.    The Spoliation

According to Eckert attorney Pomerleau, the Eckert firm had "no contact with any person at Junction's plant in Ohio other than Jateen Kapoor regarding a production of documents." Pomerleau Decl. ¶ 12. In other words, all of the documents that Eckert produced on the Acero Defendants' behalf during the first year of this litigation were provided to the firm by or through Kapoor. If any searches were conducted of the Kapoor Account or any other Acero Defendant ESI, those searches were conducted by Kapoor rather than by counsel or by other litigation professionals.

On May 20, 2019, anticipating that Eckert's withdrawal motion would be granted, attorney Roberts contacted Thomas Trevino at Junction and learned that, although Kapoor was no longer employed by the Acero Defendants,[5] the company "was still able to search Mr. Kapoor's emails."

---

[4] Thereafter, Judge Koeltl expanded my reference to include settlement (Dkt. No. 57) and  general pretrial management. (Dkt. No. 98.)

[5] Although the record does not provide an exact date for Kapoor's departure, the parties acknowledged at an October 24, 2019 conference that by May 2019 Kapoor was no longer employed by the Acero Defendants and was working for a company identified as "United,"

2019 Roberts Decl. ¶ 10; *see also* Declaration of Thomas Trevino (Trevino Decl.) (Dkt. No. 126-12) ¶ 2 ("I reported that there was still an active email account for Mr. Kapoor on Junction's Google server."). Roberts provided Trevino with a basic list of search terms to run on the Kapoor Account,[6] which Trevino did, exporting the resulting subset of emails – the Segregated Emails – to a PST file. *Id*. ¶ 2, 2019 Roberts Decl. ¶ 10.

No further action was taken by the Acero Defendants or their counsel with respect to either the Kapoor Account or the Segregated Emails until August 2, 2019, when the stay was lifted. Roberts then asked Trevino to "share" the Segregated Emails, but Trevino "learned that the PST files I extracted in May were only stored on Google servers for 15 days." Trevino Decl. ¶ 4.[7] Trevino attempted to "re-do the work performed in May 2019," only to find that "a human resources individual at the Junction plant had, in the interim, deleted the email accounts of former Junction employees, including Kapoor," which was "done without my knowledge and [was] an unfortunate oversight." *Id*. ¶ 5; *see also* 2019 Roberts Decl. ¶ 12 (attributing the deletion to a "mid-level human resources person"). Trevino contacted Google, but was told that Google only retained deleted emails for 27 days, "and then they are purged from their servers." Trevino Decl. ¶ 5.

After Roberts learned about theses setbacks, he instructed Junction to run the same basic search terms "on all of its other email accounts for emails 'sent' or 'received' to/from Jateen Kapoor." 2019 Roberts Decl. ¶ 13. Trevino did so, *see* Trevino Decl. ¶ 6, and Roberts "provided Plaintiff with the resultant emails Bates stamped  30595-37211." 2019 Roberts Decl. ¶ 13. Roberts

---

described as "a parent of JSM," in Dubai. *See* Transcript of October 24, 2019 Conf. (Oct. 24 Tr.) (Dkt. No. 116) at 13:16-14:17, 37:9-22.

[6] The terms were: Weber, Charlestown, JSM, Eckert, Agarwal, and Stock Purchase Agreement. Trevino Decl. ¶ 2.

[7] The record does not disclose Trevino's professional background or his position at the Acero Defendants.

did not, however, tell Charlestown's counsel about the deletion of the Kapoor Account or the loss of the Segregated Emails.

By letter dated August 12, 2019 (Dkt. No. 102-2), Charlestown once again asked the Acero Defendants for information regarding their document collection processes, asserting that their productions "do not reflect a proper search and production of documents from Acero's email servers." *Id*. at 4. Dissatisfied with the Acero Defendants' response, Charlestown filed a letter-application on October 14, 2020 (Dkt. No. 102), asserting that "hundreds, if not thousands, of emails produced by Charlestown were missing from Defendants' production," and that emails were not produced "in the appropriate format with metadata." *Id*. at 3. Plaintiff requested an order compelling defendants to produce deposition witnesses, describe their document collection efforts, and serve a privilege log. *Id*.

The Court scheduled a discovery conference for October 24, 2019. (Dkt. No. 104.) On October 21, 2019, attorney Roberts filed the Acero Defendants' response to plaintiff's letter-application (Acero Oct. 21 Letter) (Dkt. No. 109), in which he wrote that the documents produced by his firm, on behalf of the Acero Defendants, were "derived from" various sources including "Jateen's [sic] Kapoor Inbox; Jateen's Kapoor Archived; and Jateen Kapoor's Sent." *Id*. at 2. Roberts also noted than an additional "7000+ pages of emails from Acero were shared with Charlestown" on October 15, 2019, *id*., presumably the fruits of the searches that Trevino performed on email accounts other than Kapoor's. *Id*. By October 21, 2019, Roberts had been aware for over two months that the Kapoor Account had been deleted, that the Segregated Emails had been lost, and that no backup data could be obtained from Google.

Following the October 24, 2019 conference (during which attorney Roberts again failed to mention the deletion of the Kapoor Account and the loss of the Segregated Emails), the Court

directed the Acero Defendants to "serve one or more declarations or affidavits documenting the scope and depth of its search for and production of relevant ESI, including, without limitation, the identity of all ESI custodians whose files were searched, a description of the files so searched . . . and lists of search terms employed," and extended the fact discovery cutoff to December 24, 2019. (Dkt. No. 111.) On October 31, 2019, the Acero Defendants produced additional documents based on a search of Abhishek's emails, conducted by Trevino. 2019 Roberts Decl. ¶¶ 15-16; Trevino Decl. ¶ 7. On November 5, 2019, after receiving the Court's October 24 Order, attorney Roberts visited Junction's plant in Ohio, where he asked Junction's (unnamed) Director of IT to run further searches "across Acero Junction's network" for the time period June 2016-June 2018, which resulted in another production of documents. *Id*. ¶ 17. Roberts did not, however, contact Kapoor, either directly or through JSM.

On November 25, 2019 – one month prior to the close of fact discovery, including depositions – the Acero Defendants served the 2019 Roberts Declaration, the Pomerleau Declaration, and the Trevino Declaration, revealing the facts summarized above. Contrary to Roberts' October 21, 2019 letter, the Acero Defendants had not, in fact, produced documents from Kapoor's "inbox" or other email files (except to the extent that Kapoor himself had selected and provided emails to Eckert for production). All of the other documents produced by the Acero Defendants in this action – including emails showing Kapoor as the sender or a recipient – came from the files of other custodians. *See* Pomerleau Dec. ¶¶ 10-11, 2019 Roberts Dec. ¶¶ 4, 6, 8, 13-17; Trevino Decl. ¶¶ 6-8.

### H.      The Kapoor Deposition

On December 12, 2019, Kapoor sat for deposition.[8] He testified that the Agreement underlying this action was "not valid" because "it was never discussed"; because it did not bear his initials on every page, even though he had "a habit of initialing all pages of the contract"; because he "would never sign this sort of agreement," the terms of which "would never be acceptable to me"; because he did not in fact sign it (although "the signature appears to be mine"); and because "Charlestown knew . . . that I did not have authority to sign this agreement alone." Kapoor Tr. at 18:1-19:7, 100:5-101:25, 115:2-13; 135:8-11. According to Kapoor, he first saw the Agreement "[s]ometime in April 2018." *Id*. at 99:2-100:4.

### I.      The Kapoor Emails

Kapoor also testified that when he worked at Junction he had a "system" of "using an Outlook Express where the [e]mails would be downloaded and I would be working through that system only." *Id*. at 35:2-4. Kapoor stated that he downloaded both his "official" email account – that is, the Kapoor Account – and his personal emails, and that his Outlook Express system "remains there." *Id*. at 35:4-5. Upon hearing this, attorney Roberts began working to "have the materials produced" from Kapoor's laptop. 2020 Roberts Decl. ¶ 3.[9] Graydon's e-discovery vendor

---

[8] Certain relevant portions of Kapoor's deposition transcript (Kapoor Tr.) were submitted to the Court, with plaintiff's moving papers, as Exhibit A to the Lonergan Declaration. Other portions were submitted, with plaintiff's reply papers, as Exhibit V to the Lonergan Reply Declaration.

[9] The deposition testimony attached to plaintiff's motion papers does not include any express testimony about Kapoor's laptop. On April 28, 2020, at oral argument on the sanctions motion, attorney Roberts read into the record what he described as additional passages from Kapoor's deposition transcript, in which the witness testified, among other things, that he had his downloaded emails "[w]ith me in my laptop," including all of his Acero emails from 2016 through June of 2018. Transcript of April 28, 2020 Hr'g (April 28 Tr.) (Dkt. No. 151) at 45:6-11, 47:3-14. The Acero Defendants did not attach those passages (or any portion of the Kapoor transcript) to their papers in opposition to the sanctions motion.

"secured over 50,000 emails from Mr. Kapoor." *Id.* ¶ 5. On January 27, 2020, "[a]fter a de-duplication procedure (within the e-mails and against emails already produced in this action) and a privilege review (log provided)," the Acero Defendants produced documents with the Bates range JSO 66618 to 80344 (that is, approximately 13,700 pages). *Id.* On this basis, attorney Roberts attested on January 27, 2020 that "production from Mr. Kapoor's Acero email account . . . has now been made." *Id.*

Plaintiff takes a different view. Plaintiff's counsel agrees that the Acero Defendants produced approximately 13,700 pages on January 27, 2020, which was two weeks after plaintiff filed the instant sanctions motion, and that the production included 2,806 emails "to, from, copying or blind copying Jateen Kapoor." Lonergan Reply Decl. ¶ 2. Most of those emails, however, were sent from or to Kapoor's personal gmail.com address and were unrelated to the issues in this action. Only 412 of the newly-produced emails were sent from or to the Kapoor Account, and of those, only 24 were exchanged with "anyone with a Charlestown Capital Advisors . . . email address." *Id.* ¶ 2(b)-(c). By contrast, Charlestown itself had produced 1650 emails "in which Jateen Kapoor was a sender or recipient." *Id.* ¶ 3.

Among the many discoverable emails that should have been in the Kapoor Account but were never produced by the Acero Defendants are several that tend to undercut Kapoor's deposition testimony. For example, the Acero Defendants did not produce Kapoor's copy of a September 15, 2017 email from Weber, at Charlestown, which discussed various "due diligence items" and added, "Refreshing the terms of our engagement is a critical part of our working together. An updated copy of our engagement letter is attached. Please sign and return it to us." Lonergan Decl. Ex. N. The attachment appears to be a draft of the Agreement. As another example, the Acero Defendants did not produce Kapoor's copy of a January 10, 2018 email from

Maheshwari, the Managing Director of Charlestown, agreeing to a meeting in New York on Thursday, January 11, 2018 (the day the Agreement was allegedly signed). *Id*. Ex. O. Perhaps most significantly, the Acero Defendants did not produce Kapoor's copy of the January 12 Email, which was sent to him one day after that New York meeting and included, as an attachment, a scanned copy of the fully-executed Agreement. *Id*. Ex. P.

At oral argument on the sanctions motion, attorney Roberts told the Court that the reason for the missing emails was the "deduplication process" employed by the Acero Defendants' e-discovery vendor, "meaning the emails that had already been in the record were deduplicated." April 28 Tr. at 50:7-8. Seeking clarification, the Court asked whether the Kapoor emails were deduplicated against other "emails already produced by your clients" or against "emails produced by anybody," in which case – for example – the January 12 Email (assuming it existed on Kapoor's laptop) would have been excluded from the January 27 production. *Id*. at 50:24-51:15. Roberts replied, "That's my understanding, Your Honor, I wasn't involved in the deduplication, that was done by the vendor, but yes, that's my understanding." *Id*. at 51:16-19. Counsel then offered a stipulation for "all purposes throughout the case":

> [A]ny email that was sent to Jateen Kapoor at his @acerojunction.com email address, I'll stipulate it was received. The fact that Mr. Kapoor testified in December of 2019 that he doesn't recall receiving or doesn't believe he received it, we will waive any argument to suggest that it wasn't. If it was sent to that email address and it's in the record, and it's been produced by Charlestown, we will stipulate that it was received.

*Id*. at 52:13-22.

Attorney Roberts also agreed, during the oral argument, to produce the Kapoor emails again, without deduplicating. April 28 Tr. at 56:3-16. However, plaintiff objected, urging that the Acero Defendants not be given any further opportunities to cure what plaintiff saw as an additional Rule 37(e) violation. *Id*. at 87:1-9 (arguing that if the Acero Defendants withheld Kapoor's copy

of the January 12 Email, "it is another piece of evidence pointing to the fact that Acero has intentionally attempted to prevent Charlestown from having necessary components of Jateen Kapoor's ESI."). On reflection, the Court closed the record on the sanctions motion, *id.* at 100:5-6, and concluded the hearing.

## II.   ANALYSIS

### A.   Legal Standards

Because this action was referred to me for general pretrial management pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(a), I have broad authority to impose discovery sanctions. Orders imposing such sanctions "are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), 'unless the sanction employed disposes of a claim.'" *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *16 (S.D.N.Y. July 18, 2017) (quoting *Seena Int'l Inc. v. One Step Up, Ltd.*, 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016)), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017). A magistrate judge's authority to order (rather than recommend) a discovery sanction does not depend on the relief requested, but rather depends on the "sanction the magistrate judge actually imposes." *Id.* (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3068.2, at 383 (Thomson Reuters 2014)).

Rule 37(e), which was significantly amended in 2015, now governs sanctions for failure to preserve ESI. "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court:

> (1)   upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

> (2)   only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A)    presume that the lost information was unfavorable to the party;

(B)    instruct the jury that it may or must presume the information was unfavorable to the party; or

(C)    dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

As amended, therefore, Rule 37(e) requires "a three-part inquiry":

The first is to decide if the rule applies at all – that is, if a party failed to take "reasonable steps" to preserve electronically stored information "that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been "prejudice to another party from loss of the information," in which case the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider – regardless of prejudice to any other party – is whether the destroying party "acted with the intent to deprive another party of the information's use in the litigation," in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*Coan v. Dunne*, 602 B.R. 429, 437 (D. Conn. 2019).

The sanctions permitted under subsection (e)(1), available upon a finding that the spoliation caused "prejudice to another party," must be limited to "measures no greater than necessary to cure the prejudice." Thus, if the only prejudice to the movant "lies in the extra time and expense that have been necessary to obtain relevant discovery from third parties," *Lokai Holdings*, 2018 WL 1512055, at *12, monetary sanctions may be a sufficient cure. Other sanctions permissible under subsection (e)(1) include more "serious measures," such as "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.

However, to obtain the "particularly harsh" sanctions listed in subsection (e)(2) – including adverse inference instructions and terminating sanctions – the court must first find that the party to be sanctioned acted with an "intent to deprive." *Lokai Holdings*, 2018 WL 1512055, at *8. If such a finding is made, no separate showing of prejudice is required, because "the finding of intent [to deprive] . . . support[s] . . . an inference that the opposing party was prejudiced by the loss of information." *Id.* (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).[10]

"In addition to any other sanctions expressly contemplated by Rule 37(e), as amended, a court has the discretion to award attorneys' fees and costs to the moving party, to the extent reasonable to address any prejudice caused by the spoliation." *Lokai Holdings*, 2018 WL 1512055, at *9; *see also CAT3*, 164 F. Supp. 3d at 499.

### B.      Application of Standards

#### 1.      Sanctions Are Warranted Under Rule 37(e)(1)

The Acero Defendants do not deny that they had an obligation, from the outset of this action, to preserve the Kapoor Account. Nor do they deny that they failed to take reasonable steps to do so. In fact, they concede that the Kapoor Account was deleted due to their own missteps, "as part of a wholesale deletion of accounts of former employees," 2019 Roberts Decl. ¶ 2, which was "an unfortunate oversight." Trevino Decl. ¶ 5. By the time the deletion was discovered, it was too late to recover backup emails from Google. *Id.* Moreover, although Trevino had searched for, copied, and segregated the emails most likely to contain relevant evidence – at counsel's direction

---

[10] "The requirement of intent, which is unique to Rule 37(e), distinguishes the destruction of electronically-stored information from alternative forms of evidence; for all other types of evidence, a movant can obtain a severe sanction, including an adverse inference instruction, upon a showing that a party engaged in only 'negligent spoliation.'" *Greene v. Bryan*, 2019 WL 181528, at *3 (E.D.N.Y. Jan. 14, 2019) (quoting *Ungar v. City of New York*, 329 F.R.D. 8, 12 (E.D.N.Y. 2018)).

– the Segregated Emails "were only stored on Google servers for 15 days." Trevino Decl. ¶ 4. Thus, in resisting spoliation sanctions, the Acero Defendants primarily argue that "no ESI has been lost." Acero Def. Opp. Mem. (Dkt. No. 131) at 1. In support of this statement, they point out that "[t]housands and thousands of emails to/from Mr. Kapoor have long been a part of the record in this case," *id*. at 6, and contend that any ESI that was inadvertently deleted from Junction's servers was later "restored or replaced" from Kapoor's laptop. *Id*. Defendants further contend that plaintiff has suffered "no prejudice," because it seeks only "a redundant set of emails," *id*. at 7, and that there is no clear and convincing evidence in the record that they acted with the intent to deprive plaintiff of Kapoor's emails. *Id*.[11]

a)   Obligation to Preserve

"The first element of the traditional spoliation test," which is also applicable to ESI under Rule 37(e), "requires the moving party to demonstrate that the spoliating party had an obligation to preserve the evidence at the time it was destroyed." *Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, at *8 (S.D.N.Y. Dec. 19, 2017) (citation and quotation marks omitted). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *accord Resnik v. Coulson*, 2019 WL 1434051, at *7 (E.D.N.Y. Mar. 30, 2019) (quoting *Rabenstein v. Sealift, Inc.*, 18 F. Supp. 3d 343, 360 (E.D.N.Y. 2014)). "The duty to preserve ESI imposed by Rule 37(e) incorporates this longstanding common law duty." *Resnik*, 2019 WL 1434051, at *7 (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendments).

---

[11] JSM, which is not targeted by the sanctions motion but which nonetheless filed its own opposition brief (Dkt. No. 132), largely echoes the Acero Defendants' arguments.

In this case, the obligation to preserve Kapoor's emails at the time of deletion is undeniable. Kapoor's signature appears on the contract that is the subject of this action, but he and his then-employers, the Acero Defendants, deny that he negotiated it, signed it, or saw it until months later. From the outset of the dispute it would have been obvious to any competent attorney (and to Kapoor himself) that he would be a crucial witness for the Acero Defendants, that his credibility would be hotly contested, and that his email account would be highly relevant to his narrative and his credibility – not only because it was likely to contain communications either corroborating or contradicting his testimony, but also because the *absence* of such communications could have independent evidentiary significance.[12] Moreover, by the time the destruction occurred, which was a full year into the litigation, the Acero Defendants had specifically identified the Kapoor Account (which at that point had never been properly searched) as ESI that required preservation, and had made some (ineffective) attempts to preserve it. Accordingly, the Court finds that the Acero Defendants had an obligation to preserve the Kapoor Account, and were aware of that obligation, long before the ESI was spoliated in 2019.

b)      Failure to Take Reasonable Steps

Once the obligation to preserve relevant ESI attaches, the party in possession of that ESI must take "reasonable steps" to preserve it. Fed. R. Civ. P. 37(e). The party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Lokai Holdings*, 2018 WL 1512055, at *11 (quoting *Treppel*

---

[12] For example, if the electronic record showed that Kapoor received and opened the January 12 Email on or shortly after the date it was sent to him, but failed to respond in any way (externally or internally), such evidence could be used to show that the Acero Defendants' claims of forgery and related defenses were developed only after Charlestown's invoice arrived. The loss of the original Kapoor Account, however, prevents plaintiff from determining when the January 12 Email arrived in Kapoor's inbox and when (if at all) he opened it, forwarded it, or otherwise took action in relation to it.

*v. Biovail Corp.*, 249 F.R.D. 111, 118 (S.D.N.Y. 2008)) (quotation mark omitted). Counsel is "obligated to 'oversee compliance with [a] litigation hold, monitoring the party's efforts to retain and produce the relevant documents,' and to 'become fully familiar with [their] client's document retention policies, as well as the client's data retention architecture.'" *Lokai Holdings*, 2018 WL 1512055, at *11 (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431-32 (S.D.N.Y. 2004)). Where a party fails to timely institute "a formal litigation hold and . . . otherwise informally preserve ESI," the Court can conclude that it did not undertake reasonable steps to preserve ESI. *Capricorn Mgmt. Sys., Inc. v. Gov't. Employees Ins. Co.*, 2019 WL 5694256, at *10 (E.D.N.Y. July 22, 2019), *report and recommendation adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020). The "reasonable steps" inquiry has been equated to "roughly a negligence standard." *Leidig*, 2017 WL 6512353, at *10. "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (footnote omitted).

The Acero Defendants failed to take reasonable steps to preserve relevant ESI, including the Kapoor Account. Two litigation hold memos were issued in 2018, but the first, dated June 13, 2018, was sent only to Kapoor, 2020 Roberts Decl. Ex. A, and the second, dated September 3, 2018, was sent only to Kapoor, Dinesh, and Ashok. *Id*. Ex. B. Abhishek Aggarwal's name is on the second memo, but he was not included in the transmittal email, even though he was Kapoor's co-President and co-Director when the Agreement was allegedly executed, and remained an employee of Junction throughout the discovery period in this action. *See* Acero Oct. 21 Letter (informing the Court that attorney Roberts "learned today" that Abhishek is an employee of Junction). Abhishek later testified at deposition that he was *never* instructed to keep, maintain, or refrain from destroying records or communications relating to Charlestown. Abhishek Tr. at 30:21-

31:6. Moreover, there is no evidence showing that the litigation hold memos – or any comparable instructions – were provided to the Acero Defendants' human resources staff, IT staff, or any other employees with day-to-day responsibility for maintaining the relevant records. Thus, the Acero Defendants failed to "suspend [their] routine document retention/destruction policy" and failed to "put in place" (not just put down on paper) an effective litigation hold. *Lokai Holdings*, 2018 WL 1512055, at *11. The consequences of that failure became clear in mid-2019, when an unnamed human resources employee – who, insofar as the record reflects, was never instructed otherwise – deleted the Kapoor Account wholesale.

It is equally clear that the Acero Defendants' counsel failed to oversee compliance with the litigation hold notices, failed to monitor the clients' efforts to retain the documents subject to the hold, and failed to become "fully familiar" with the clients' document retention policies and "data retention architecture," as required by law. *Lokai Holdings*, 2018 WL 1512055, at *11. Eckert has confirmed that for the approximately one-year period from the filing of this action to the firm's withdrawal, it "had no contact with any person at Junction's plant in Ohio other than Jateen Kapoor regarding a production of documents." Pomerleau Decl. ¶ 12. Moreover, there is no evidence in the record that Kapoor himself was familiar with the Acero Defendants' document retention policies or data retention architecture – much less than he shared that information with outside counsel. Although attorney Roberts of the Graydon firm began communicating directly with Trevino in May 2019,[13] he did not meet with Junction's (unnamed) Director of IT until after this Court directed him, on October 24, 2019, to furnish sworn statements regarding the scope and

---

[13] Although Roberts supplied Trevino with search terms in May 2019, and asked him to run those terms on the Kapoor Account and preserve the results, he apparently left it entirely to Trevino to execute both he searches and the preservation. Roberts did not ask for the Segregated Emails for another three months, until August 2019, by which time they were gone, along with the Kapoor Account from whence they had been sourced. 2019 Roberts Decl. ¶¶ 11-12.

depth of the Acero Defendants' search for and production of ESI. 2019 Roberts Decl. ¶ 17. By then, the Acero Defendants had deleted the Kapoor Account and lost the Segregated Emails. Similarly, although Junction apparently had an in-house General Counsel, there is no evidence that either Eckert or Graydon worked with that attorney, or that the General Counsel played any role in preserving or attempting to reconstruct relevant ESI, until October 2019. *See id.* (attesting that Roberts emailed the General Counsel on October 23, 2019, asking her to "doublecheck with Abhishek" and search for relevant emails in Abhishek's account).

Accordingly, the Court finds that the Acero Defendants failed to take reasonable steps to preserve relevant ESI, including the Kapoor Account, and that this failure resulted in the spoliation now at issue.

          c)      Whether the ESI Can be Restored or Replaced Through Additional Discovery

The next question is whether the contents of the Kapoor Account can be "restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  The Acero Defendants contend that they have already restored Kapoor's relevant emails, which they produced to Charlestown on January 27, 2020 (the same date that they filed their papers in opposition to the present motion). Acero Opp. Mem. at 5 & Ex. 1. The restoration efforts, however, were both untimely and inadequate. They were untimely because discovery in this action, originally set to close on February 15, 2019 (Dkt. No. 31), was extended four times (Dkt. Nos. 77, 89, 97, 111) before ultimately closing on December 24, 2019. This was more than a month before the final production of documents by the Acero Defendants on January 27, 2020. Plaintiff was required to conduct all

of its fact depositions, including the deposition of Kapoor himself, without any knowledge as to what emails might ultimately be produced from his laptop.[14]

Defendants' efforts were inadequate for at least two reasons. First, the only evidence that Kapoor's laptop contained all of the emails that the Acero Defendants deleted when they destroyed his account in mid-2019 is Kapoor's own, somewhat hazy, testimony at deposition, much of which is not even in the record in admissible form, but was instead recited to the Court, by counsel, at oral argument.[15] Portions of Kapoor's deposition testimony regarding his emails were demonstrably inaccurate[16] or conflict with other sworn testimony in the record.[17] Moreover, Kapoor provided no details as to how he downloaded his emails to his laptop, when (and how frequently) he did so, or what (if any) deletions took place before or after the download. Nor did the Acero Defendants provide such information (for example, in a declaration from Kapoor or from their e-discovery vendor) when they advised plaintiff by email, on January 27, 2020, that

---

[14] Because many of the witnesses, including Kapoor, do not live or work in the United States, arranging their depositions in New York was a contentious process requiring multiple court orders. (Dkt. Nos. 104, 121.) Even if the Court were otherwise inclined to extend discovery again (at the Acero Defendants' expense) as an alternative to harsher sanctions, the degree of difficulty involved in executing such a remedy here would counsel against that option.

[15] According to counsel, Kapoor stated that the emails he "sent and received" while an Acero employee were "[w]ith me in my laptop"; that he still had "access" to his "email from when [he] was at Acero Juntion"; and that he had downloaded "all" of his Acero emails from 2016 through June 2018, as well as his personal emails. April 28 Tr. at 45:8-11; 46:23-47:14.

[16] For example, Kapoor testified that he used his business email address "for Acero Junction purpose all the time," and did not remember "using gmail for Acero Junction." Kapoor Tr. at 26:3-21. However, Eckert emailed its second litigation hold memo to Kapoor using only his gmail.com address. 2020 Roberts Decl. Ex. B.

[17] For example, Kapoor testified (according to counsel) that he provided "those emails," that is, the emails he "sent and received " when he was an Acero employee, "to counsel," meaning Eckert, "last year," meaning 2018. April 28 Tr. at 45:8-17. According to Eckert, however, Kapoor provided a considerably narrower group of documents, selected by Kapoor himself after "his review of Plaintiff's discovery requests and discussions with counsel." Pomerleau Decl. ¶ 10. Had Kapoor provided all of his emails to Eckert, Eckert undoubtedly would have produced more than six of them in its November 2018 document production. Lonergan Reply Decl. ¶ 4.

their vendor "took control of over 50,000 emails from Mr. Kapoor" and performed a "de-duplication procedure (within these 50,000+ emails and against emails already produced in this action)," as well as a privilege review, before producing "emails from Jateen Kapoor's account." Acero Def. Opp. Mem. Ex. 1. On this record, the Court cannot assume that searching the Kapoor laptop in January 2020 was the equivalent of searching the Kapoor Account before it was deleted. *See Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *24 (S.D.N.Y. June 20, 2019) (finding that certain ESI originally housed on two laptops could not be "otherwise restored or replaced" where the custodian of that ESI testified that he transferred any relevant documents from the laptops to an external hard drive, which was provided to counsel, but counsel took no steps to confirm the integrity or completeness of the custodian's search, such that there was "no way to ascertain whether or not [the custodian] located and transferred all documents potentially relevant to this lawsuit from the two laptops onto the external hard drive.").

Second, and even more problematic, is the substantial evidence before the Court that the January 27, 2020 production was, in fact, incomplete. It included only "34 files containing the word 'Charlestown,'" only 412 emails "to, from, copied to, or blind copied to" the Kapoor Account, and only 24 emails between the Kapoor Account and Charlestown's personnel. Lonergan Reply Decl. ¶ 2(b)-(d). Among the missing items are hundreds of discoverable emails between the Kapoor Account and Charlestown that are known to exist, because Charlestown produced them, but the Acero Defendants did not. *Id.* ¶ 3. Some of the missing emails are likely to play a significant role at trial, *see id.* Exs. M-S, including the email that Weber sent to the Kapoor Account on January 12, 2018, attaching a fully-executed copy of the Agreement, *see id.* Ex. P, but which Kapoor denies receiving. *See* Kapoor Tr. at 99:4-5, 14-24 (testifying that he did not see the Agreement until April 2018). Given the affirmative defenses in this case, the arrival of that January

12 Email in Kapoor's inbox has independent evidentiary significance, as does the metadata that would show when Kapoor received it, when (if at all) he opened it, and when (if at all) he forwarded it or took other action concerning it.[18] The Acero Defendants have never produced the January 12 Email, nor any of the related metadata, which raises questions not only about the fate of that email (and others known to plaintiff but not produced by defendants) but also about the existence of other potentially probative emails not currently known to plaintiff. *See Coan*, 602 B.R. at 339-40 (imposing curative measures pursuant to Rule 37(e) on Dunne for failing to preserve his emails, notwithstanding that the moving party "successfully obtained some of Dunne's emails through discovery on third parties," because "[t]here can be no assurance" that the recovered emails constitute "all of the meaningful emails that could and should have been obtained in the first instance from Dunne. It is equally plausible to conclude that the emails received from third parties are but the tip of a proverbial iceberg of other powerfully probative email communications . . . during time periods that are critical in this litigation and have not emerged from third parties in discovery.").

Counsel's proffer at oral argument – that the Acero Defendants' vendor deduplicated the laptop emails not only against one another, but also against prior productions by all parties, including plaintiff, *see* April 28 Tr. 50:4-52:10 – might explain, but does not excuse, the paucity of probative emails in the production. Deduplicating "across the entire data set" available in a litigation, known as "horizontal" or "global" deduplicating, is more complex, time-consuming and expensive than "vertical" or local" deduplication, where "each custodian's data set is deduplicated against itself." Robert M. Abrahams and Scott S. Balber (chapter authors), "Objective Culling," 3 N.Y. Prac., Com. Litig. in New York State Courts § 27:39. Moreover, horizontal deduplication is

---

[18] *See* n.12, *supra*.

"not appropriate" in cases like this one, where "it is important to know whether a certain custodian actually opened an e-mail, or an attachment to an e-mail." *Id*.

The Acero Defendants, through their counsel, are responsible for the instructions given to their e-discovery vendor. Moreover, those instructions must be considered against the backdrop of the mistakes and misjudgments already made by the Acero Defendants and their counsel, resulting in the destruction of the Kapoor Account, the loss of the Segregated Emails, and the instant motion for spoliation sanctions, which was pending when they made their final production of emails from the Kapoor laptop. If, in this context, counsel instructed an e-vendor to withhold otherwise discoverable and highly probative emails received by the Kapoor Account (including associated metadata) on the ground that the discovery record already contained a version of the same email sent from another witness's account (or vice versa), the Acero Defendants must live with the consequences of that decision. *See Karsch*, 2019 WL 2708125, at *20 (quoting *Ungar*, 329 F.R.D. at 16) ("Even where the spoliator has acted with mere negligence, it is well-established that, as between a negligent party and an innocent party, the former has no right to retain the fruits of their misconduct.").

The facts here are clear. Thanks to Jateen Kapoor's deposition testimony, the Acero Defendants were presented with a last-minute opportunity to restore or replace at least some of the missing ESI by producing *all* of the discoverable ESI found on the Kapoor laptop, including *all* of the relevant emails sent from or to the Kapoor Account, with associated metadata. They failed to do so, and the record remains murky as to whether the missing emails were missing from the laptop or were on the laptop but withheld from the production. Either way, the gaps demonstrate that the Acero Defendants have not in fact restored or replaced the spoliated ESI. Thus, as in *Coan*, "[t]here

can be no assurance" that the recovered emails constitute "all of the meaningful emails that could and should have been obtained in the first instance" from the Kapoor Account. 602 B.R. at 440.

d)      Prejudice

"Although Rule 37(e)(1) requires a finding of 'prejudice' in order for sanctions to issue, the Rule is unclear as to what is meant by that word." *Ungar*, 329 F.R.D. at 15. The advisory committee's notes do not offer much guidance, stating only that "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments. While the moving party ordinarily "has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence," *Ottoson v. SMBC Leasing and Finance, Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (quoting *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 509-10 (S.D.N.Y. 2013)), Rule 37(e)(1), as amended, "does not place a burden of proving or disproving prejudice on one party or the other. . . . The rule leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments. *See also Karsch*, 2019 WL 2708125, at *20 (quoting *Ungar*, 329 F.R.D. at 16) ("In many cases . . . it would be unfair to require 'affirmative proof as to whether the evidence would have been advantageous to the movant' as a predicate to subsection (e)(1) sanctions.").

Here, the record shows, and the Court finds, that Charlestown has been prejudiced by the loss of the Kapoor Account. It was handicapped in its ability to assess and test Kapoor's credibility at deposition, and will face the same challenge at trial, particularly in relation to the affirmative defenses that challenge the validity of Kapoor's signature on the Agreement. As discussed above, a number of emails relevant to these issues are known to exist, but would provide significantly more powerful evidence if produced from the Kapoor Account itself, with associated metadata confirming their receipt and potentially shedding light on how and when Kapoor opened them,

29

forwarded them, or replied to them. Alternatively, a thorough search of the original Kapoor Account might reveal that the account owner deleted inconvenient emails, which could also constitute probative and powerful evidence. Since the Kapoor Account was deleted, neither species of evidence is available to Charlestown.

During his deposition, Kapoor frequently testified that he did not recall the relevant events and would need to refresh his recollection, including by "going back to my mails." Kapoor Tr. at 174:19-24; *see also id*. at 169:4-7 ("I don't remember exactly what I did with that right now. I can go back to the mails. If I can just see my conversation, if something is there."). Because of the Acero Defendants' spoliation, Kapoor cannot "go back to the mails" or "see [his] conversation," and neither can Charlestown, which may permit Kapoor to maintain a conveniently poor memory. This too is prejudicial to Charlestown.

Plaintiff also argues, with some force, that it is prejudiced by the probable loss of emails that would shed additional light on the contested issues but that that it has never seen, because the Acero Defendants have never produced them. *See* Pl. Mem. at 16-17. For example, Kapoor testified that the approval of the ultimate shareholders of Holdings was required for him to bind the Acero Defendants, and that the Agreement was never discussed among those shareholders. *See*, *e.g.*, Kapoor Tr. at 82:2-85:4. These claims are difficult to evaluate without a complete production of relevant emails from the Kapoor Account, which would, in all likelihood, either corroborate or contradict his testimony. Thus, as in *Karsch*, if Kapoor's emails had been properly preserved and produced, they "could have resolved" various "significant factual disputes between the parties." 2019 WL 2708125, at *20.

Charlestown need not, of course, "establish that a smoking gun email . . . was irretrievably destroyed." *Karsch*, 2019 WL 2708125, at *21 (quotation marks omitted). It is sufficient that

Charlestown has provided evidence that "plausibly 'suggests' that the spoliated ESI could support [its] case." *Id*. (collecting cases). *See also Ottoson*, 268 F. Supp. 3d at 580 ("The prejudiced party must not be held to too high a strict standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would allow parties who have destroyed evidence to profit from that destruction.") (internal quotation marks and citation omitted); *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 430 (W.D.N.Y. 2017) (quoting Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments) ("Determining the content of the lost information [is] a difficult task . . . [but] placing the burden of proving prejudice on the party that did not lose the information may be unfair.").

The Acero Defendants argue that the missing Kapoor emails would be "redundant" in light of the "[t]housands and thousands of emails to/from Mr. Kapoor" already produced by various parties to this action, Acero Def. Opp. Mem.  at 6, and that any prejudice flowing from the loss of the Kapoor Account is mitigated by the "utterly massive" record in this action. *Id*. at 7. In this case, however – as noted above – the actual receipt of certain emails by Kapoor has independent evidentiary significance, such that another party's production of its copy of the same email cannot substitute for the Kapoor ESI. Moreover, if the January 27, 2020 production is typical of document discovery provided in this action, it is "massive" only because most of the documents produced are irrelevant to the claims and defenses at issue in this action. *See* Lonergan Reply Decl. ¶ 2(d) (reporting that only .68% of the files contained in the Acero Defendants' January 27, 2020 production contained the term "Charlestown"). Finally – and notwithstanding the searches that the Acero Defendants conducted across other employees' email accounts once they realized that they had lost Kapoor's – their failure to conduct an adequate search of the Kapoor Account prior to deleting it, coupled with their failure to produce the January 12 Email and other probative

documents (known to exist) from the "replacement" laptop, renders plausible Charlestown's suspicion that it has not yet seen (and may now never see) all of the emails that could prove helpful to its case.

Charlestown has also been prejudiced, as discussed below, in that it has been required to expend significant time and money discovering the truth about the spoliation and pursuing the evidence to which it is entitled.

### e) Intent

The Court must next determine whether the Acero Defendants "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Such a finding is a necessary predicate to the imposition of the "particularly harsh" sanctions permitted under subsection (e)(2). *Lokai Holdings*, 2018 WL 1512055, at *8 (characterizing adverse-inference instructions as "extreme sanction[s] that should not be given lightly," and default judgments as "even more drastic") (internal quotation marks and citations omitted). The intent standard is both stringent and specific: "[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Leidig*, 2017 WL 6512353, at *11 (holding that although plaintiff intended to "disable his websites" and delete certain email files, he did not do so for the purpose of depriving defendants of the use of the ESI in litigation and therefore could not be sanctioned under subsection (e)(2)).

It is the movant's burden to demonstrate that the spoliating party acted with the intent to deprive. *Rhoda v. Rhoda*, 2017 WL 4712419, at *2 (S.D.N.Y. Oct. 3, 2017); *Watkins v. New York City Transit Auth.*, 2018 WL 895624, at *10 (S.D.N.Y. Feb. 13, 2018). "Although Rule 37(e)(2) does not specify the standard by which the "intent to deprive" must be established, it is appropriate, given the severity of the sanctions permitted under that provision of the Rule, for the intent finding to be based on clear and convincing evidence." *Lokai Holdings*, 2018 WL 1512055, at *8; *see also*

*CAT3*, 164 F. Supp. 3d at 499 (finding that, where a party seeks "terminating sanctions" pursuant to Rule 37(e)(2), "it is appropriate to utilize the clear and convincing standard" in making a finding of intent to deprive). In *Moody*, the court held that a party may be found to have acted with the intent to deprive where "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." 271 F. Supp. 3d at 431 (quotation marks and citation omitted).

In this case, the first three *Moody* elements have clearly been established, but plaintiff's case is less strong as to the fourth factor. The affirmative acts that directly caused the loss of Kapoor's emails were the deletion of his account by a human resources employee, who was performing a routine purge of emails belonging to former employees, and the "unwitting" decision by another company employee to safeguard the most relevant emails from that file by storing them in what appears to have been a temporary facility good for 15 days only. Trevino Decl. ¶¶ 2-5, 2019 Roberts Decl. ¶¶ 10-12. Both of these acts can be credibly explained as involving gross negligence rather than bad faith. Indeed, plaintiff's counsel conceded as much as oral argument, when the Court asked, "who is or who are the bad guys here?," to which attorney Lonergan responded, "I think you have to look at it in the aggregate," April 28 Tr. at 31:25-33:1, and declined to identify any of the human beings whose collective failures led to the spoliation as having acted with the "intent to actually deprive [Charlestown] of evidence." *Cf. Leidig*, 2017 WL 6512353, at *11. *Cf. Moody*, 271 F. Supp. 3d at 426-27 (finding the requisite intentionality where the defendant railroad's 's tortured explanation for the loss of data from its "event recorder," which was the "most

important objective evidence" of how a serious train accident occurred, was "implausible," and the railroad's four-year-long failure to review "critical data relating to how that accident occurred" was "unfathomable").

The Acero Defendants' misconduct was significant. They exhibited both a protracted disregard of their obligation to preserve, search, and produce relevant evidence, and a lack of basic technical competence. Moreover, their counsel's accompanying obfuscations and misdirections were inexcusable. Not only did counsel conceal the fact of the spoliation for months; he made misleading representations to his opponent – and to the Court – about the source of the documents that the Acero Defendants did produce. However, the evidence does not convince me that these actions were taken "for the specific purpose of gaining an advantage in this litigation." *Karsch*, 2019 WL 2708125, at *22 (declining to find intentionality for Rule 37(e) purposes where a party "took down" an entire email server after sending a letter threatening litigation, and failed to make or preserve an adequate backup, but proffered a plausible business reason for the takedown); *see also Fashion Exchange LLC v. Hybrid Promotions, LLC*, 2019 WL 6838672, at *5-6 (S.D.N.Y. Dec. 16, 2019) (declining to find clear and convincing evidence of intentionality even though the degree of negligence and/or incompetence by the spoliating party was "stunning" and it had represented that it did not maintain certain financial documents that in fact had been destroyed). I therefore conclude that plaintiff has not shown an entitlement to subsection (e)(2) sanctions.

## 2. Remedy

The Court must now determine the appropriate sanctions under Rule 37(e)(1). Because I have found that Rule 37(e)(2) sanctions are not warranted, the sanctions must be "no greater than necessary to cure the prejudice" to Charlestown. Fed. R. Civ. P. 37(e)(1).

a)      Attorneys' Fees

An award of defendants' expenses, including attorneys' fees, is clearly warranted under Rule 37(e)(1), which authorizes an award of attorneys' fees and costs to the moving party to the extent reasonably necessary to address any prejudice caused by the spoliation. *Lokai Holdings*, 2018 WL 1512055, at *9; *CAT3, LLC,* 164 F. Supp. 3d at 502.

Charlestown has incurred significant expenses, including attorneys' fees, as a result of the Acero Defendants' spoliation, including expenses incurred to compel the Acero Defendants to reveal what happened to the Kapoor Account and to obtain this Opinion and Order. "While a precise delineation of reimbursable fees and other expenses must await [Charlestown's] submission of a fee application with supporting documentation," *Karsch*, 2019 WL 2708125, at *26, the Court notes that plaintiff is not entitled to fees incurred prior to the spoliation itself. However, Charlestown may apply for its expenses, including reasonable attorneys' fees, incurred thereafter in pursuit of Kapoor's emails and/or information about Kapoor's emails, and in pursuing this sanctions motion. Because Charlestown claims that the lack of a complete production from the Acero Defendants added to the cost of preparing and deposing defendants' witnesses, Pl. Mem. at 22, those fees may also be available, to the extent that Charlestown can show they resulted from the spoliation.

b)      More Serious Measures

In addition to monetary sanctions, "[o]ther sanctions permissible under subsection (e)(1) include more 'serious measures,' such as 'forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument.'" *Karsch*, 2019 WL 2708125, at *13 (quoting Fed. R. Civ. P. 37(e)(1)

advisory committee's note to 2015 amendment). In this case, since the harm to Charlestown from the Acero Defendants' misconduct is "not merely a 'matter of costs,'" *Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *28 (S.D.N.Y. Sept. 28, 2019) (quoting *Hand Picked Selections, Inc. v. Handpicked Wines Int'l Pty Ltd.*, 2006 WL 1720442, at *3 (E.D.N.Y. June 22, 2006)), more serious measures – beyond fee-shifting – are required to "cure the prejudice." Fed. R. Civ. P. 37(e)(1). As the Second Circuit noted in *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991), affirming a broad preclusion order imposed pursuant to Rule 37(b), remedies of this nature also serve to "enforce compliance with the discovery rules and maintain a credible deterrent to potential violators." *Id.* at 1367 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

First, the Acero Defendants will be precluded from arguing or presenting evidence to show that Kapoor did not receive (or did not send) emails that have been produced in discovery by other parties and that show any of Kapoor known emails addresses as the recipient or the sender. As to emails showing Kapoor as the recipient (such as the January 12 Email), this is precisely the same relief that the Acero Defendants offered, in the form of a stipulation, at oral argument. *See* April 28 Tr. at 15:13-22. As to emails showing Kapoor as the sender, the order will similarly prevent Kapoor or his former employers from taking unfair advantage of an evidentiary gap created by the Acero Defendants themselves. *See Shanghai Weiyi Int'l Trade Co., Ltd. v. Focus 2000 Corp.*, 2017 WL 2840279, at *10 (S.D.N.Y. June 27, 2017) (preclusion orders are "entirely appropriate" where the sanctioned party has failed "to produce the evidence necessary to resolve the issue as to which preclusion is sought"). As a practical matter, therefore, it may simply be deemed true, for purposes of summary judgment or at trial, that Kapoor received the January 12 Email in his inbox, in the ordinary course, at or shortly after the time it was sent by Charlestown.

Second, Charlestown will be allowed to present evidence to the finder of fact regarding the loss of Kapoor's emails, and – in the event the case is tried to a jury – may seek an appropriate jury instruction, the wording of which will be at the discretion of the trial judge, allowing the jury to consider the loss of that evidence, and the circumstances under which it was lost, in evaluating witness credibility and making other factual determinations. *See Leidig*, 2017 WL 6512353, at *14 (permitting a party to "present evidence to the jury" that the opposing party lost ESI it should have preserved). As this Court explained in *Karsch*, sanctions of this nature ensure that the finder of fact will have the full context for the evidentiary imbalance that will become apparent at trial, "which is itself relevant evidence going to the parties' credibility and other factual issues." 2019 WL 2708125, at *27.  In the event of a jury trial, it is the trial judge who must determine the precise scope of the spoliation evidence to be permitted at trial and craft any related jury instructions on a full evidentiary record. *Id.* (collecting cases); *see also Lokai Holdings*, 2018 WL 1512055, at *17 (permitting injured party to seek a jury instruction, in a form to be approved by the district judge, as a sanction under Rule 37(e)(1)).

The Court has carefully considered Charlestown's request for more severe sanctions, including entering judgment in favor of Charlestown and precluding the Acero Defendants from offering any evidence, from any source, in support of any of the five affirmative defenses that question Kapoor's signature on, assent to, or authority to execute the Agreement. *See* Pl. Mem. at 21-22; Pl. Reply Mem. at 9. The extreme remedy of an adverse judgment, which can only be imposed pursuant to subsection (e)(2), is unavailable for the reasons discussed above. The broader preclusion order that plaintiff requests is overly harsh, in that it would potentially preclude testimony and other evidence wholly unaffected by the spoliation underlying plaintiff's motion, and thus would penalize the Acero Defendants beyond the degree needed to cure the prejudice

flowing from that misconduct.  Moreover, given the breadth of the preclusion sought, the resulting order would, as a practical matter, be equivalent to an order striking those defenses, which is a subsection (e)(2) remedy. *See Rothman v. City of New York*, 2019 WL 6210815 (S.D.N.Y. Nov. 21, 2019) (holding that Rule 37(e)(2) governed orders striking affirmative defenses).

## III.   CONCLUSION

For the reasons stated above, plaintiff's motion for sanctions (Dkt. No. 124) is GRANTED IN PART.

It is hereby ORDERED that the Acero Defendants shall pay the expenses, including attorneys' fees and out-of-pocket costs, reasonably incurred by Charlestown as a result of their failure to preserve Jateen Kapoor's emails, including the fees and costs reasonably incurred to discover the spoliation, to review the evidence from Kapoor's laptop, offered in place of evidence from the Kapoor Account, and to obtain this Opinion and Order. The monetary sanctions shall be imposed jointly and severally upon Junction and Holdings.[19]

---

[19] "The Court has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel." *Joint Stock Co. Channel One*, 2019 WL 4727537, at *20 (citation omitted). In this case, the acts of spoliation were committed by the Acero Defendants themselves. Although the misconduct resulted, in part, from the failure of their litigation counsel – both Eckert and Graydon – to take effective steps to ensure that relevant ESI would be preserved against just such mishaps, it is well-settled that "[a] litigant chooses counsel at his peril," *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) (affirming a severe preclusion order, "tantamount to a dismissal of [plaintiff's] damage claim," where plaintiff failed to comply with a discovery order "due to a total dereliction of professional responsibility, amounting to gross negligence," by its counsel), and cannot avoid sanctions by blaming the underlying events on counsel. *See also New York State Nat. Org. for Women v. Cuomo*, 1997 WL 671610, at *5 (S.D.N.Y. Oct. 28, 1997) ("[T]he acts and omissions of counsel are generally attributed to the client."). Here, neither plaintiff nor the Acero Defendants have briefed the question of whether or to what degree the monetary sanctions imposed by this Court should be apportioned. *See* Pl. Reply Mem. at 10 ("[I]t does not matter how the Acero Defendants and their current and past counsel apportion responsibility to satisfy [this Court's] award among them."). Moreover, Eckert is not presently before the Court and had no formal opportunity to respond to plaintiff's motion. Therefore, while nothing in this Opinion and Order precludes the Acero Defendants from asking their present and past litigation counsel to bear a portion of the monetary sanctions assessed, they will run, in the first instance, against the Acero Defendants themselves.

It is further ORDERED that Charlestown shall submit one or more declarations evidencing its recoverable fees and costs no later than **October 14, 2020.** All sums requested must be supported by admissible evidence, including properly authenticated copies of counsel's relevant time and expense records. The Acero Defendants may file a response – limited to the amount of Charlestown's recoverable fees and costs– no later than **October 28, 2020**. There shall be no reply.

It is further ORDERED that the Acero Defendants are precluded from arguing or offering testimony or other evidence to show that Kapoor did not send or receive any emails that have been produced by other parties and that show any of Kapoor's known email addresses as the sender or a recipient. For example, Kapoor may not deny that the January 12 Email appeared in his inbox, in the ordinary course, at or shortly after the time it was sent by Charlestown.

Is further ORDERED that Charlestown may present evidence to the finder of fact at trial regarding the deletion of the Kapoor Account and the loss of the Segregated Emails. In the event this case is tried to a jury, Charlestown may seek an appropriate jury instruction, the wording of which will be at the discretion of the trial judge, allowing the jury to consider that loss of that evidence, and the circumstances of its loss, in evaluating witness credibility and otherwise making its determinations.

It is further ORDERED that no later than **October 14, 2020**, the parties shall submit a joint status update. Discovery having concluded, the parties shall advise the Court as to whether any party intends to file a motion for summary judgment. If so, the parties shall succinctly outline the grounds on which they intend to seek or oppose summary judgment, and shall seek a pre-motion conference before the Hon. John G. Koeltl, United States District Judge. Alternatively, if no party intends to move for summary judgment, the parties shall propose a deadline to file a joint pre-trial order in accordance with the individual practices of Judge Koeltl.

This Opinion and Order disposes of the motion at Dkt. No. 124.

Dated: New York, New York
       September 30, 2020

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**