```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/20/21
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLESTOWN CAPITAL ADVISORS, LLC,

        Plaintiff,

-against-

ACERO JUNCTION, INC., et al.,

        Defendants.

18-CV-4437 (JGK) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

For the reasons stated below, the Court awards plaintiff Charlestown Capital Advisors, LLC (Charlestown) a total of $55,230 in attorneys' fees, to be paid by defendants Acero Junction, Inc. (Junction) and Acero Junction Holdings, Inc. (Holdings) (collectively the Acero Defendants) pursuant to Fed. R. Civ. P. 37(e)(1).

**I.    BACKGROUND**

On January 13, 2020, Charlestown filed a motion (Dkt. No. 124) seeking spoliation sanctions against the Acero Defendants, up to and including the entry of a default judgment against them, as a penalty for their failure to preserve the business email account of their co-President and Director, Jateen S. Kapoor, whose signature appears on the January 11, 2018 engagement agreement (Agreement) at the center of this breach of contract action, but who claims in this action that he did not negotiate the Agreement, did not sign it, and did not see it until months later, notwithstanding that Charlestown emailed him a fully-executed copy on January 12, 2018. In an Opinion and Order dated September 30, 2020 (the Sept. 30 Opinion) (Dkt. No. 155), the Court granted Charlestown's motion in substantial part, finding that the Acero Defendants had an obligation to preserve Kapoor's business email account (the Kapoor Account); that they nonetheless, through a series of missteps, caused it to be destroyed; that although they later produced certain emails from Kapoor's laptop, that production failed adequately to restore or

replace the missing information; and that Charlestown was prejudiced by the spoliation, entitling it to curative sanctions pursuant to Rule 37(e)(1). *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61-66 (S.D.N.Y. 2020).[1] Consequently, the Court: (i) precluded the Acero Defendants from denying that Kapoor received Charlestown's January 12, 2018 email (or that he received or sent any other emails produced by other parties and sent to or from any of Kapoor's known email addresses); (ii) authorized Charlestown to present evidence to the jury concerning the deletion of the Kapoor Account and related issues; and (iii) ordered the Acero Defendants to "pay the expenses, including attorneys' fees and out-of-pocket costs, reasonably incurred by Charlestown as a result of their failure to preserve Jateen Kapoor's emails, including the fees and costs reasonably incurred to discover the spoliation, to review the evidence from Kapoor's laptop, offered in place of evidence from the Kapoor Account, and to obtain this Opinion and Order." *Id*. at 69.

In connection with the monetary sanction, the Court directed Charlestown to "submit one or more declarations evidencing its recoverable fees and costs," supported by "admissible evidence, including properly authenticated copies of counsel's relevant time and expense records." *Charlestown Cap. Advisors v. Acero Junction*, 337 F.R.D. at 70. On October 15, 2020, Charlestown submitted its fee application (Pl. App.) (Dkt. No. 157), seeking a total of $134,805.50 for an aggregate of 162.4 hours of work by four of its attorneys at Arnold & Porter Kaye Scholer LLP (APKS), at hourly rates ranging from a low of $500 (for the work of first-year associate Ryan Holmes in 2019) to a high of $1,065 (for the work of partner Samuel Lonergan and senior attorney

---

[1] Because the Court did not find that the Acero Defendants acted "with the intent to deprive another party of the information's use in the litigation," Fed. R. Civ. P. 37(e)(2), Charlestown was not entitled to the "'particularly harsh' sanctions permitted under subsection (e)(2)," such as the entry of a default judgment. *Charlestown Cap. Advisors v. Acero Junction*, 337 F.R.D. at 66-67.

Robert Grass in 2020). The application is supported by declarations from the four attorneys for whose time compensation is sought, attesting to the work they performed and their hourly rates. *See* Declaration of Samuel Lonergan (Dkt. No. 158) (seeking compensation for 22.1 hours of work at $970 per hour in 2019 and $1065 per hour in 2020); Declaration of Robert Grass (Dkt. No. 159) (36.9 hours of work at $970 per hour in 2019 and $1065 per hour in 2020); Declaration of Susan Hu (Dkt. No. 161) (61.5 hours of work at $795 per hour in 2019 and $875 per hour in 2020); Declaration of Ryan Holmes (Dkt. No. 160) (41.9 hours of work at $500 per hour in 2019 and $520 per hour in 2020).[2] Charlestown does not seek compensation for any paralegal hours, nor for any out-of-pocket costs incurred. Pl. App. at 2.

In their responding submission, dated October 28, 2020 (Acero Def. Opp.) (Dkt. No. 163) the Acero Defendants argue that Charlestown seeks fees for work that was not "reasonably incurred" to discover the spoliation, review the laptop evidence, or obtain the sanctions order, *see* Acero Def. Opp. at 2-3; that no fees should be awarded for the time that Charlestown spent preparing its fee application, *see id*. at 4; and that the rates charged by Charlestown's counsel are too high. *Id*. at 4-7. According to the Acero Defendants, an award of $35,000 would be reasonable. *Id*. at 7.

## II.   ANALYSIS

The question now before the Court is whether the requested fees were "reasonably incurred" by Charlestown "as a result of" the Acero Defendants' failure to preserve Kapoor's emails. *Charlestown Cap. Advisors v. Acero Junction*, 337 F.R.D. at 69. To answer such a question, in the Second Circuit, a district court multiplies the relevant attorneys' reasonable hours

---

[2] Plaintiff states in its motion that it seeks fees for 159.2 hours spent by counsel. Pl. App. at 2. However, the time listed in the underlying attorney declarations adds up to 162.4 hours.

3

spent on compensable tasks by a reasonable hourly rate for the services performed, so as to determine a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *accord Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2013 WL 3322249, at *4 (S.D.N.Y. July 2, 2013), *aff'd*, 679 F. App'x 33 (2d Cir. 2017). The fee applicant must "document[ ] the appropriate hours expended and hourly rates." *Dancy v. McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y. 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

### A. Hourly Rates

At the first stage of the analysis, the fee applicant "bears the burden of 'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015) (quoting *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010)), *report and recommendation adopted*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015). Evidence that the client "actually paid" the fees requested is "compelling evidence of a reasonable market rate." *Danaher Corp. v. Travelers Indem. Co.*, 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014) (quoting *Reiter v. Metropolitan Transportation Authority of New York,* 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004)); *see also Triumph Const. Corp. v. New York City Council of Carpenters Pension Fund*, 2014 WL 6879851, at *4 (S.D.N.Y. Dec. 8, 2014) ("That the fees requested equal the amount actually billed to Respondents is a strong indicator that those fees are reasonable."). Nonetheless, the Court retains "some responsibility to 'disciplin[e] the market'" if necessary, *Danaher Corp.*, 2014 WL 4898754, at *2 (quoting *Arbor Hill*, 522 F.3d at 184), by "stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184. The inquiry is "case-specific," *Townsend v. Benjamin*

*Enterprises, Inc.*, 679 F.3d 41, 59 (2d Cir. 2012), meaning that a reasonable rate for a routine task in a simple case may be quite different from a reasonable rate for a complex task in a challenging case, even when performed by the same firm or the same attorney. *See*, *e.g.*, *Lilly v. City of New York*, 934 F.3d 222, 231-32 (2d Cir. 2019) ("It was entirely appropriate for the district court to consider the complexity of a matter because a reasonable paying client would consider the complexity of his or her case when deciding whether an attorney's proposed hourly rate is fair, reasonable, and commensurate with the proposed action."); *Reiter v. MTA*, 2007 WL 2775144, at *5 (S.D.N.Y. Sept. 25, 2007) (where attorney Smith had "extensive" criminal experience but "little" civil experience, proffered rates "may be appropriate with respect to payment to Smith on criminal matters but not with respect to civil cases").

Here, Charlestown seek fees for the time of four APKS attorneys at what appear to be their full and undiscounted hourly rates. *Cf. Karsch v. Blink Health, Inc.*, 2019 WL 6998563, at *2 (S.D.N.Y. Dec. 20, 2019) (in seeking spoliation sanctions, defendants requested fees at rates representing 75% of Gibson Dunn's "standard hourly rates"). The rates requested for the APKS attorneys representing Charlestown are set out in the table below, along with each attorney's title and years of litigation practice, as reported in their declarations.

| Name | Title | Years | 2019 Rate | 2020 Rate |
|---|---|---|---|---|
| Samuel Lonergan | Partner | 18 | $970 | $1,065 |
| Robert Grass | Senior Attorney | 29 | 970 | 1,065 |
| Susan Hu | Senior Associate | 8 | 795 | 875 |
| Ryan Holmes | Associate | 1 | 500 | 520 |

Lonergan and the other APKS timekeepers attest that these were the rates "charged" by APKS in 2019 and 2020, respectively, when the work was performed. *See*, *e.g.*, Lonergan Decl.

5

¶¶ 2, 5. However, none of the declarants states that *Charlestown* was charged those rates, much less that it actually paid them for the hours now at issue. I therefore cannot accept the quoted rates as compelling evidence, or even a strong indicator, that they are reasonable. *See In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *7 (describing Anderson Kill's "standard" billing rates as "instructive" but not "dispositive, since there is no suggestion that any of the Plaintiffs has actually paid the firm that amount").

Nor can I accept the APKS attorneys' conclusory assertion that their stated rates are "in line" with the hourly rate for attorneys at their seniority levels "at other comparable law firms in New York City." Lonergan Decl. ¶ 5; Grass Decl. ¶ 2; Hu Decl. ¶ 5; Homes Decl. ¶ 2. That claim is based on "the National Law Journal ('NLJ') Billing Rates Publication for law firms in New York for the year 2017" (apparently the most recent year available), which Lonergan attaches as an exhibit to his declaration, and which includes data for 65 law firms in or near New York City. Lonergan Decl. ¶ 5 & Ex. A. Neither APKS nor its constituent firms, however, appears on the list.[3] Moreover, as the Acero Defendants point out, the "average Average Partner Rate" on the NLJ list is $562 per hour, while the "average Average Associate Rate" is $414 per hour. Acero Def. Opp. at 5-6. It may well be that APKS considers itself "comparable" to the higher-billing firms on the list, which tend to be large national or international firms with multiple practice areas and offices in Manhattan, rather than the lower-billing firms, which tend to be smaller establishments that offer more limited services and may be located outside of New York City. However, Charlestown has not submitted any data or argument on the point.

---

[3] APKS was formed on January 1, 2017, through a combination of Arnold & Porter LLP, headquartered in Washington, D.C., and Kaye Scholer LLP, headquartered in New York City. *See* APKS, "Our History," https://www.arnoldporter.com/en/about/history (last visited April 20, 2021).

Nor, for that matter, has Charlestown made any effort to "compare the rates its counsel has charged to rates charged by counsel in similar cases" and approved by courts in this district. *Danaher Corp.,* 2014 WL 4898754, at *4. Charlestown has been similarly uncommunicative concerning the experience and skills of the four attorneys for whom it seeks fees (other than their titles and years of practice), although it is well-settled that "[s]uch information is required if [the court is to] engage in the necessary 'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" *Id*. (quoting *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005)). As the Second Circuit explained in *Farbotko*, "determination of the prevailing market rate in the relevant community also requires an evaluation of evidence proffered by the parties." 433 F.3d at 209. Here, the only such evidence is the NLJ list.

On this record, the Court will apply the "average" rates shown on the NLJ list, rounded up for the passage of time: $600 per hour for partner Lonergan and senior attorney Grass (whose nearly 30 years of experience entitle him to be categorized as a partner for present purposes) and $450 per hour for associates Hu and Holmes. While these rates are considerably lower than those that APKS says it charges (and may have charged in this case), Charlestown has not carried its burden of "'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4.

Moreover, the present fee application arises out of a relatively straightforward discovery dispute in which the Acero Defendants "concede[d] that the Kapoor Account was deleted due to their own missteps," *Charlestown Cap. Advisors v. Acero Junction*, 337 F.R.D. at 60, requiring Charlestown to establish only that the missing information was not restored or replaced through

7

the production from the Kapoor laptop and that it was prejudiced thereby. *Id*. at 62-66. In such cases – even where the applicant has established that the requested fee was actually paid – the courts frequently discount the rates charged by large New York City firms to arrive at a "reasonable" fee for the work involved. *See*, *e.g.*, *Abraham v. Leigh*, 2020 WL 5512718, at *9 (S.D.N.Y. Sept. 14, 2020) (approving discounted rate of $725 per hour for co-Chair of Cozen O'Conner's Legal Malpractice Group with 55 years of experience; full rate of $435 for junior partner with nine years of experience; and discounted rate of $325 for associate with five years of experience in complex discovery dispute involving "fraudulently doctored" documents), *reconsideration denied,* 2020 WL 5836511 (S.D.N.Y. Oct. 1, 2020); *Karsch v. Blink Health*, 2019 WL 6998563, at *2-3 (approving discounted rates of $825 per hour for Gibson Dunn partner with more than 30 years of experience; $625 for less experienced partner; $425 for sixth-year associate; and $350 for third-year associate in complex spoliation dispute); *SEC v. Yorkville Advisors, LLC,* 2015 WL 855796, at *19 (S.D.N.Y. Feb. 27, 2015) ("The prevailing market rates for attorneys [] in the Southern District of New York for fees incurred on discovery motions range from $450 to $600 for partners, $220 to $400 for associates.").

    **B.**    **Hours Expended**

At the second stage of the analysis, the court multiplies each timekeeper's reasonable hourly rate by the reasonable number of hours expended. *Romeo & Juliette*, 2013 WL 3322249, at *4. Except in unusual circumstances – not present here – the party seeking a fee award must document the "hours expended" by submitting its attorneys' underlying timesheets. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) ("contemporaneous time records are a prerequisite for attorney's fees in this Circuit"); *Scott v. City of New York,* 626 F.3d 130, 133 (2d Cir. 2010) ("*Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases."). "In addition, in cases where the documentation of hours is 'vague or

8

incomplete,' the court may also reduce the award." *Reiter v. MTA*, 2007 WL 2775144, at *9 (collecting cases); *see also LBBW Luxemburg S.A. v. Wells Fargo Securities LLC*, 2016 WL 5812105, at *8 (S.D.N.Y. Sept. 22, 2016) (reducing award where fee applicant's failure to specify which hours were expended on which tasks was "exacerbated by the vague entries and block-billing entries" contained in the time records that were submitted).

Time that was not spent on compensable tasks must of course be excluded from the calculation. *See, e.g., Karsch v. Blink Health*, 2019 WL 6998563, at *5 (discounting hours by 25% because certain tasks, such as reviewing documents once produced, would have been required "regardless of plaintiff's discovery violations"); *Pichardo v. C.R. Bard, Inc.*, 2015 WL 13784565, at *6 (S.D.N.Y. Jan. 26, 2015) (applying an across-the-board reduction "to ensure that defendants' recovery is limited to fees caused by" plaintiff's counsel's violations). Reductions are also appropriate for hours that are "excessive, redundant, or otherwise unnecessary" to accomplish the otherwise-compensable tasks. *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)); *accord Reiter v. MTA*, 2007 WL 2775144, at *9 (quoting *Hensley*, 461 U.S. at 434, and collecting cases). In addition, "courts in the Second Circuit have reduced fee awards based on overstaffing." *R.F.M. v. Nielsen*, 2020 WL 6393583, at *7 (S.D.N.Y. May 4, 2020) (collecting cases and imposing a 10% fee reduction "to address overstaffing" by Latham & Watkins), *report and recommendation adopted,* 2020 WL 6393718 (S.D.N.Y. May 20, 2020)

As the Supreme Court noted in *Hensley*, "[t]here is no precise rule or formula for making these determinations." 461 U.S. at 436. For this reason – and because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," *Carey*, 711 F.2d at 1146 – the court may apply one or more across-the-board percentage cuts "as a practical means of trimming

9

fat from a fee application." *Id.*; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). A court therefore has "broad discretion to determine the amount of time reasonably expended." *Hiciano v. Apfel*, 2002 WL 1148413, at *1 (S.D.N.Y. May 29, 2002); *Rivera v. Astrue*, 2010 WL 8971795, at *2 (E.D.N.Y. Apr. 5, 2010).

Here, reductions in the hours sought are required for two reasons.

### 1. Failure to Submit Contemporaneous Time Records

Two of the APKS timekeepers – partner Lonergan and associate Hu – did not submit their "[c]ontemporaneous time records," as required by *Carey* and its progeny and contemplated by this Court's Sept. 30 Opinion. Instead, both attorneys explain in their declarations that, although they keep contemporaneous records of their time on a computer program maintained by APKS for that purpose, those records do not necessarily show the "exact amount of time specifically spent" on certain compensable tasks, such as "looking for missing emails from Defendants' productions involving Jateen Kapoor, investigating deficiencies in Defendants' ESI collection, pursuing the existence of additional emails, and deposing witnesses regarding these same topics." Lonergan Decl. ¶ 8; Hu Decl. ¶ 8. Consequently, instead of appending their actual time records, Lonergan and Hu each attach a table (Exhibit B to the Lonergan Declaration; Exhibit A to the Hu Declaration) that "breaks down the amount of time spent each day on work related to this fee application, based on a review of my contemporaneous time records for the Charlestown case." Lonergan Decl. ¶ 8; Hu Decl. ¶ 8. Each attorney attests that the time entries on the attached table "reflect my best approximation of the amount of time spent on issues related to this fee application

based on a careful review of the descriptions in [APKS's] time records and contemporaneous emails describing work performed that day." Lonergan Decl. ¶ 8; Hu Decl. ¶ 8.[4]

The Court appreciates that where, as here, fees are awarded for certain tasks and not others, an attorney's contemporaneous timesheets may not map perfectly onto those tasks, requiring some judgment as to how much of each time entry is properly compensable as part of the fee award. Typically, however, attorneys faced with this problem submit their contemporaneous records to the court, along with an explanation of what portion is properly compensable, thus allowing the court to review the judgment calls made and adjust them if it disagrees. *See*, *e.g.*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2020 WL 2512045, at *4 (S.D.N.Y. May 15, 2020) (reviewing contemporaneous time records, submitted with redactions for non-compensable time, and concluding that no further reductions were required); *Protoons Inc. v. Reach Music Publ'g, Inc.*, 2016 WL 680543, at *13 (S.D.N.Y. Feb. 19, 2016) (reducing final award by 5% after reviewing "every invoice submitted in this case" and noting that "the large majority of the entries are detailed, specific, and fully disclosed"), *aff'd,* 718 F. App'x 8 (2d Cir. 2017). Here, however, Lonergan and Hu have provided only the end product of their judgment – a table showing their "best approximation" of their compensable time on various days, divorced from their underlying contemporaneous records. The Court has no way of knowing, for example, whether the entries on the annexed tables represent 10% or 90% of the time recorded in any of the corresponding contemporaneous entries, nor what other tasks were originally part of those entries but were deemed non-compensable and excised. The Court cannot even be certain, from the face of the

---

[4] The other two APKS timekeepers attest that the records attached to their declarations are "true and correct cop[ies] of my time spent on the discovery dispute related to this fee application." Glass Decl. ¶ 5; Ryan Decl. ¶ 5.

materials submitted, whether the descriptions of the work performed are identical to the original descriptions or were edited for purpose of the pending fee application.

The lack of contemporaneous time records for attorneys Lonergan and Hu would justify the Court in awarding nothing for their time. Indeed, "after *Carey* there are few examples of this court permitting a district court to award fees in the absence of full contemporaneous records." *Scott*, 626 F.3d at 133; *see also*, *e.g.*, *Doe v. Darien Bd. of Educ.*, 2015 WL 8770003, at *6 (D. Conn. Dec. 14, 2015) (declining to award "any fees for Attorney Hall's work" where Hall submitted estimates of his compensable time rather than contemporaneous records); *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 443 (S.D.N.Y. 2001) ("Counsel's failure to offer more than the most general estimate of time expended in this case therefore precludes any award of fees.").

However, the approximations submitted by Lonergan and Hu do not (for the most part, subject to certain exceptions discussed below) appear facially unreasonable, and this Court, having presided over the discovery phase of the case as well as the sanctions motion, does not doubt that both attorneys provided valuable services to plaintiff in connection with compensable matters. Rather than disallow their time entirely, therefore, the Court will apply a 50% discount to their hours due to their failure to submit contemporaneous records. *See*, *e.g.*, *LBBW Luxemburg*, 2016 WL 5812105, at *7-8 (discounting requested hours by 75% where, among other things, attorney Holden provided a set of "replacement hours," reflecting his "best estimate" or "best conservative assessment" of his compensable time, rather than submitting contemporaneous time records, which made "ascertaining the reasonableness of the replacement hours [] difficult, if not impossible"); *In re World Trade Ctr. Disaster Site Litig.*, 105 F. Supp. 3d 413, 416 (S.D.N.Y. 2015) (awarding $48,000 rather than the almost $303,000 sought for the time of attorney Mishkin, who submitted

a "fee schedule" that was "reconstructed from various documents generated at or around the time the work was completed" rather than contemporaneous time records).

### 2. Reasonably Necessary Work

The Acero Defendants argue that it should have taken Charlestown's counsel no more than three hours of work to "discover the spoliation." Acero Def. Opp. at 2-3. The Court disagrees. The spoliation occurred between May 20 and August 2, 2019, and was ultimately disclosed on November 25, 2019. *See Charlestown Cap. Advisors v. Acero Junction*, 337 F.R.D. at 56-57. While it is true that some of the discovery work performed prior to November 25, 2019 would have been performed regardless of the spoliation – including review and analysis of the emails and other documents that were produced by the Acero Defendants – it is clear from the docket (and from the APKS declarations and attached tables) that Charlestown's attorneys were increasingly suspicious, during these months, about the adequacy of the Acero Defendants' document collection procedures and the completeness of the resulting production. *See id*. at 56 (noting that on August 12, 2019, Charlestown "once again asked the Acero Defendants for information regarding their document collection processes, asserting that their productions 'do not reflect a proper search and production of documents from Acero's email servers,'" and on October 14, 2019, it filed a letter-application asserting that "hundreds, if not thousands, of emails produced by Charlestown were missing from Defendants' production"). The Court therefore agrees that some of the time spent on document review, as well as much of the time spent communicating with opposing counsel and with the Court concerning the deficiencies in the Acero Defendants' production, was reasonably necessary to uncover the spoliation.

The Acero Defendants are correct, however, that some of attorney Hu's time included in Charlestown's fee application was spent on tasks outside the scope of the Sept. 30 Opinion, such as reviewing the documents produced by defendant JSM International Limited (JSM) for

13

deficiencies and communicating with JSM's counsel. *See* Hu Decl. Ex. A. Accordingly, the Court will reduce Hu's compensable time, prior to November 25, 2019, by a further 10%.

The Acero Defendants also challenge the hours spent "to obtain this Opinion and Order," arguing that the roughly $72,000 in fees that Charlestown seeks for preparing and arguing its spoliation motion is excessive in light of the fact that it did not succeed in obtaining terminating sanctions, and thus that the motion "was unsuccessful, at least in part." Acero Def. Opp. at 3. Additionally, according to the Acero Defendants, it should not have taken four attorneys – including "a 30 year legal veteran," attorney Grass – to obtain non-terminating sanctions after the Acero Defendants admitted the spoliation. *Id*. at 3-4. The Court agrees only in part.

While the destruction of the Kapoor Account was admitted, the Acero Defendants argued vigorously that no sanctions should be imposed because the missing ESI had been restored or replaced through the later production from Kapoor's laptop, and thus that Charlestown was not prejudiced. *See Charlestown Cap. Advisors v. Acero Junction*, 337 F.R.D. at 62-66. Overcoming these arguments required a detailed analysis of the laptop production – and its deficiencies – as well as legal argument. Moreover, while Charlestown did not obtain a default judgment, it did obtain meaningful sanctions, both monetary and non-monetary. The Court agrees, however, that it should not have required four attorneys, including two partner-level attorneys billing at over $1000 per hour, to achieve that degree of success. Grass spent 36.9 hours overseeing the research for the motion (substantially performed by Holmes) and preparing Charlestown's moving and reply briefs, while Lonergan spent approximately 13 hours reviewing the motion papers, preparing for the sanctions hearing, and arguing the motion. Grass Decl. Ex. A; Lonergan Decl. Ex. B. Although Lonergan and Grass did not duplicate one another's efforts, splitting these tasks between two high-billing senior attorneys (one of whom, Grass, appears to have been brought onto the Charlestown

14

team for purpose of the motion and thus lacked familiarity with the record) necessarily introduces an element of inefficiency into the process. *See ACE Ltd. v. Cigna Corp.*, 2001 WL 1286247, at *3 (S.D.N.Y. Oct. 22, 2001) (quoting *Gen. Elec. Co. v. Compagnie Euralair, S.A.*, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997)) ("It is well-recognized that when more lawyers than are necessary are assigned to a case, the level of duplication of efforts increases."). Consequently, the Court will reduce attorney Grass's hours by 25%. *See*, *e.g.*, *R.F.M.*, 2020 WL 6393583, at *7 (reducing compensable hours by 10% due to overstaffing); *LBBW Luxemburg*, 2016 WL 5812105, at *9 (reducing compensable hours in part because "[t]he Court is not convinced that the plaintiff's staffing strategy, as explained by the plaintiff, is reasonable"); *ACE v. CIGNA*, 2001 WL 1286247, at *5 (imposing across-the-board cut of 50% because "this case was overstaffed and the numerous attorneys and paraprofessionals engaged in duplicative tasks, performed functions in tandem, engaged in an excessive number of conferences and billed an excessive number of hours to research").

### 3. Fees on Fees

Lastly, the Acero Defendants challenge Charlestown's inclusion of the hours that its attorneys spent preparing the instant fee application. Acero Def. Opp. at 4. It is true that the Court did not expressly "[o]rder an award of fees relating to a Fee Application." *Id*. The Court did, however, order the Acero Defendants to "pay the expenses, including attorneys' fees and out-of-pocket costs, reasonably incurred by Charlestown as a result of their failure to preserve Jateen Kapoor's emails." *Charlestown Cap. Advisors v. Acero Junction*, 337 F.R.D. at 69. Since Charlestown was directed to submit a fee application in order to document those expenses, it would defeat the purpose of the award to require it to do so at its own expense. *See also LBBW Luxemburg*, 2016 WL 5812105, at *7 (explaining that fee application expenses are recoverable because "attorney's fees incurred in preparing the fee application to determine the appropriate

15

amount of the sanctions award are necessarily 'caused by the failure' to obey the Court's order, where the sanctions motion has been granted, such as here"). Charlestown is therefore entitled to its reasonable fees incurred in preparing its fee application.

### III.   CONCLUSION

Applying the various reductions discussed above (and rounding the reduced hours to the nearest one-tenth of an hour) produces the sum of $55,230, as shown in the following chart:

| Name | Hourly Rate Sought | Hourly Rate Awarded | Hours Sought | Hours Awarded | Total |
|---|---|---|---|---|---|
| Samuel Lonergan | $970-1,065 | $600 | 22.1 | 11.1 | $6,660 |
| Robert Grass | 970-1,065 | 600 | 36.9 | 27.7 | 16,620 |
| Susan Hu | 795-875 | 450 | 61.5 | 29.1 | 13,095 |
| Ryan Holmes | 500-520 | 450 | 41.9 | 41.9 | 18,855 |
| **TOTAL** | | | | | **$55,230** |

Consequently, it is hereby ORDERED that defendants Acero Junction, Inc. and Acero Junction Holdings, Inc. are to pay plaintiff Charlestown Capital Advisors, LLC the sum of $55,230 within 30 days of the date of this Memorandum and Order. The liability is joint and several.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 157.

Dated:   New York, New York
        April 20, 2021

                              **SO ORDERED.**

                              **BARBARA MOSES**
                              **United States Magistrate Judge**